IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

_____

SOUTHERN COMMUNICATIONS  SERVICES, )
INC. D/B/A SOUTHERNLINC WIRELESS,      )
                                                          )
              Applicant,                              )
                                                          )
-against-                                               )          CIV CASE NO
                                                          )          _____
DEREK THOMAS, individually             )
And on behalf of others similarly situated,   )
                                                          )
              Respondent.                            )
                                                          )
_____)

---

**MEMORANDUM IN SUPPORT OF SOUTHERN
COMMUNICATION SERVICES, INC. D/B/A/ SOUTHERNLINC
WIRELESS' MOTION TO VACATE CLAUSE CONSTRUCTION AND
CLASS DETERMINATION AWARDS**

---

**September 17, 2010**

**TROUTMAN SANDERS LLP**
5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, GA 30308-2216
Phone: (404) 885-3000
Fax: (404) 885-3900

Robert P. Williams II, Georgia Bar No. 765413
John P. Hutchins, Georgia Bar No. 380692
Benjamin A. Gastel, Georgia Bar No. 432776
Attorneys for Respondent
Southern Communications Services, Inc. d/b/a
SouthernLINC Wireless

## INTRODUCTION

Respondent Derek Thomas ("Thomas") was a customer of Southern Communications Services, Inc. d/b/a SouthernLINC Wireless ("SouthernLINC") from June 2005 until February 2008, when Thomas terminated his mobile commercial telephone service to three different handsets prior to the expiration of his contract term.  The parties' agreement contains an arbitration clause and a clause requiring Thomas to pay a $200 early termination fee ("ETF") for each handset if he terminates his contract early or if he commits certain breaches of the agreement.

In July of 2008, Thomas filed a demand (the "Demand") with the American Arbitration Association ("AAA") on behalf of himself and all customers similarly situated claiming that SouthernLINC's ETFs are illegal.

After Thomas filed the Demand, the AAA appointed an Arbitrator who rendered two awards that are the subject of this Motion: a Clause Construction Award[1] and a Class Determination Award.[2]  The Clause Construction Award was issued pursuant to Rule 3 of the AAA's Supplemental Rules for Class Arbitration

---

[1]     A copy of this award is attached as Exhibit 1.
[2]     A copy of this award is attached as Exhibit 2.

1

(the "SRCA")[3], which states that an Arbitrator must determine whether the parties' arbitration agreement permits class arbitration.  The Class Determination Award was issued pursuant to SRCA Rules 4 and 5, which state that if the arbitration agreement is determined to permit class arbitration, the Arbitrator must determine whether the particular arbitration instigated by a claimant fits the criteria to proceed on a class basis.  On April 17, 2009, the Arbitrator rendered his Clause Construction Award, finding that the arbitration agreement permitted class arbitration.  Significantly, this determination was made even though the Arbitrator determined that the arbitration agreement was silent as to whether class arbitration was in fact permitted.  Based in part on this ruling, the Arbitrator then rendered his Class Determination Award on June 24, 2010, finding that the arbitration meets the criteria for class arbitration and certifying a class.

SouthernLINC now files this Motion to Vacate both awards because the Arbitrator exceeded his authority in two ways: first by allowing this case to proceed as a class arbitration when the arbitration agreement does not affirmatively permit class arbitration; and second by certifying a class when the dispute did not meet the SRCA requirements for class arbitration.

---

[3]      A copy of these rules may be found at the AAA's website: http://www.adr.org/sp.asp?id=21936.

## PARTIES

Applicant SouthernLINC is a Delaware corporation headquartered at 5555 Glenridge Connector, Atlanta, Georgia 30342. It is a wholly-owned subsidiary of Southern Company. SouthernLINC is, and has been during all times relevant to this action, engaged in the business of providing mobile commercial telephone service and related products and services in Georgia, Alabama, Florida, and Mississippi.

Respondent Derek Thomas is an individual residing at 202 St. Francis Road, Eufala, Barbour County, Alabama, and was a subscriber to SouthernLINC's mobile telephone service from June 2005 to February 2008.

## JURISDICTION

Jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332. SouthernLINC is a Delaware corporation with its headquarters in Atlanta, Georgia. Thomas is a resident of Alabama. The amount in controversy related to the Clause Construction Award and the Class Determination Award exceed the amounts specified in 28 U.S.C. § 1332. Additionally, the class of claimants Thomas seeks to represent consists of approximately 130,000 past and current customers of SouthernLINC, and Thomas seeks monetary damages for the putative class in excess of the amount specified in 28 U.S.C. § 1332.

3

Jurisdiction is also based on the presence of a federal question under 28 U.S.C. § 1331 because Thomas has brought two claims under federal law and because both the Clause Construction Award and Class Determination Award raise issues of federal law.

## VENUE

The parties' contract calls for arbitration proceedings to take place in Atlanta, Georgia, and provides that Georgia law shall govern the contract.  Venue is permissive under both the Federal Arbitration Act ("FAA") and the Georgia Arbitration Code ("GAC").  *See Cortez Byrd Chips, Inc. v. Bill Halbert Constr. Co.*, 529 U.S. 193, 195 (2000).

## FACTUAL AND PROCEDURAL BACKGROUND

**A.  SouthernLINC's Customer Contracts Contain An Arbitration Clause And An Early Termination Fee Clause.**

SouthernLINC provides mobile commercial telephone service to consumers, businesses, and governmental entities throughout the Southeastern United States, particularly in Georgia, Alabama, Mississippi, and Florida.  (Demand ¶¶ 13-14; Answer ¶¶ 13-14.)[4]

---

[4]     A copy of Thomas' Demand is attached as Exhibit 3.  A copy of SouthernLINC's Answer is attached as Exhibit 4.

Throughout the relevant time period, July 31, 2004 – present, SouthernLINC, except in limited circumstances not relevant to this motion, provided service pursuant to standard form contracts with each customer. (Answer ¶¶ 15-17.) This standard contract, which states that it is governed by Georgia law, contains an arbitration provision substantially as follows:

> The parties will make good faith attempts to resolve any disputes. If the parties cannot resolve the dispute within 60 days after the matter is submitted to them, then, unless otherwise agreed, the parties will submit the dispute to arbitration. The parties will request that arbitrator(s) hold a hearing within 60 days following their designation, and render a final and binding resolution within 30 days after the hearing. The parties will conduct the arbitration in Atlanta, Georgia pursuant to applicable Wireless Industry Arbitration Rules of the American Arbitration Association.

(Demand ¶ 6 and Exhibit A, ¶ 18.)

The standard form contract, with certain exceptions not relevant to this motion, also contains an ETF provision substantially as follows:

> If you terminate this Agreement or if we terminate this Agreement for cause prior to the end of the initial Term, then you will pay an Early Termination Fee(s) (ETF) of $200.00 per handset or as otherwise set forth on the web site order page and any other charges owing under this Agreement within 10 days of the payment due date of your billing statement.

(Demand ¶ 19.)

Pursuant to this ETF provision, SouthernLINC has charged customers who terminated service prior to the expiration of the term a $200 fee per handset. (Answer ¶ 19.)  SouthernLINC has not imposed the $200 fee in every instance and has regularly waived ETFs for a variety of reasons.  (Deposition of Craig Elder 155:19-161:18.)[5]  SouthernLINC charges ETFs principally to recoup the initial costs incurred in providing customers with handsets at prices significantly below cost.  (SouthernLINC Interrogatory Responses, Resp. No. 9.)[6]  The ETF also allows SouthernLINC to recoup other costs associated with marketing and sales that SouthernLINC cannot recoup unless a customer continues phone service for the entire contract term.  (*Id.*)

**B.      Thomas Filed An Arbitration Action Claiming That ETFs Are Illegal.**

Thomas was a SouthernLINC customer from June 2005 to February 2008. (Demand ¶¶ 32-33.)  During that time Thomas activated three handsets.  (*Id.* at ¶ 32.)  In February 2008, Thomas terminated his three service lines prior to the expiration of his contract term.  (*Id.* at ¶ 33.)  SouthernLINC subsequently waived

---

[5]      A copy of Mr. Elder's deposition is attached as Exhibit A to Thomas' Brief in Support of Motion for Class Certification, which is attached to this Motion as Exhibit 5.  To avoid filing unnecessary material with the Court, certain exhibits to Thomas' Brief in Support of Motion for Class Certification have been redacted.  SouthernLINC also redacted certain material to protect the confidentiality of proprietary information.  SouthernLINC will supplement this filing if it becomes necessary to do so.

[6]      A copy of these interrogatory responses are attached as Exhibit E to Thomas' Brief in Support of Motion for Class Certification.

one of the ETFs on Thomas' account, and Thomas paid another ETF.  (Thomas'

Brief in Support of Motion for Class Certification at 9-10.)  Thomas did not pay,

and SouthernLINC did not waive, the final ETF remaining on Thomas' account.

(*Id.*)

On July 31, 2008, Thomas filed his Demand with the AAA alleging that

SouthernLINC's ETFs are illegal and unreasonable.  Specifically, the Demand

alleges four counts:

> Count 1.   **Illegal Penalties:**  SouthernLINC's ETFs are illegal penalties under O.C.G.A. § 13-6-7 because (a) they are wholly disproportionate to the harm early cancellation causes SouthernLINC; (b) they are not based on a bona fide estimate of the likely damages SouthernLINC incurs from early cancellation; and (c) the damage SouthernLINC may incur as a result of early cancellation is not difficult to ascertain.

> Count 2.   **47 U.S.C. § 201(b):**  SouthernLINC's termination penalty practices are unjust, unreasonable, and unlawful in violation of 47 U.S.C. 5 201 (b).

> Count 3.   **Unjust Enrichment:**  SouthernLINC received and retained a benefit conferred by Thomas and class members at their expense through the imposition and collection of ETFs and SouthernLINC benefited unjustly at Thomas and class members' expense, which, in equity and good conscience, SouthernLINC should not be permitted to retain.

> Count 4.   **Declaratory Relief:**  SouthernLINC's ETFs are illegal penalties and should be declared illegal under 28 U.S.C. § 2201.

(Demand ¶¶ 45-79.)

Thomas filed these claims on behalf of himself and all those similarly situated and sought designation of the following class:

> All consumer subscribers to SouthernLINC's wireless telephone service pursuant to contracts which include an early termination fee provision, and who paid or who have been charged an early termination fee by SouthernLINC.[7]

(Demand ¶ 37.)

Thomas seeks monetary and injunctive relief that would require SouthernLINC to reimburse all ETFs that it has collected and would prevent SouthernLINC from collecting all charged but as yet unpaid ETFs.  (Demand ¶ 80.)  During the relevant time period, SouthernLINC charged approximately $20 million in ETFs, and putative class members paid approximately $6 million in ETFs.  (Thomas' Brief in Support of Class Certification at 2-3.)

**C.    The Arbitrator Concluded That The Parties' Arbitration Agreement Permits Class Arbitrations.**

The AAA rules applicable to class arbitrations require that an arbitrator determine whether the parties' arbitration agreement permits class arbitration, and,

---

[7]    Thomas excluded from the putative class SouthernLINC itself, any entity in which SouthernLINC has a controlling interest, SouthernLINC's parents, subsidiaries, affiliates, officers, directors, employees, and members of their immediate families, and members of the AAA and their immediate families.

if it does, whether the arbitration meets the criteria to proceed as a class arbitration. *See* SRCA Rules 3-5.

On November 24, 2008, Thomas filed his Motion for Preliminary Clause Construction Award to Allow Class Action.  In his brief in support, Thomas relied heavily on the proposition that "where an arbitration provision is silent on the availability of class action treatment, the contract will be construed to allow class arbitrations."  (Motion for Preliminary Clause Construction Award to Allow Class Action at 3 and 2-5).[8]  Thomas contended that the arbitration agreement here was silent as to class arbitration, and Thomas provided no evidence that the parties intended to permit class arbitration.  In its brief in opposition, SouthernLINC denied the parties had agreed to permit class arbitration and pointed to procedures specified in the arbitration agreement that conflicted with class arbitration.[9]

On April 6, 2009, the Arbitrator rendered his Partial Final Clause Construction Award (the "Clause Construction Award"), in which he determined that class arbitration was permissible based on the following reasoning:

> The critical question is whether it was incumbent upon [SouthernLINC] to expressly preclude class arbitration, or whether the absence of express inclusion means that it

---

[8]     A copy of Thomas' Motion for Preliminary Clause Construction Award to Allow Class Action and his Reply in Support thereto are attached as Exhibits 6 and 7 respectively.

[9]     A copy of SouthernLINC's Opposition is attached as Exhibit 8.

> is not permitted.  This Arbitrator adopts the former, and concludes that class arbitration is permitted under this arbitration clause because it was not expressly barred.
>
> …
>
> [I]t was [SouthernLINC's] drafting responsibility to preclude class claims if that was the intent.

(Clause Construction Award at 5 and 7).

In other words, the Arbitrator required SouthernLINC to present evidence that the parties intended to *exclude* arbitration, instead of requiring Thomas to prove that the parties intended to *permit* class arbitration.  On that basis, the Arbitrator granted Thomas' Motion for Preliminary Clause Construction Award To Allow Class Action.

**D.    The Arbitrator Determined That The Arbitration Met The Criteria For Class Arbitration Under SRCA Rule 4.**

On November 20, 2009, Thomas filed his Motion for Class Determination Award[10] seeking certification of his putative class under Rule 4 of the SRCA, which is substantially similar to both Rule 23 of the Federal Rules of Civil Procedure and Rule 23 of the Georgia Civil Practice Act.  Thomas alleged that his arbitration met the SRCA criteria for class arbitration.  SouthernLINC opposed this motion on the grounds that Thomas failed to meet the commonality, typicality,

---

[10]    A copy of Thomas' Motion for Class Determination Award, and Reply in Support are attached as Exhibits 9 and 10 respectively.

adequacy, predominance, and superiority requirements contained in SRCA Rule 4.[11]  In particular, SouthernLINC highlighted the fact that SouthernLINC was defending against Thomas' claims based in part on Thomas' voluntary payment of ETFs.  (SouthernLINC Opposition to Thomas' Motion for Class Certification at 13, 19-21, and 26-27.)  Under the voluntary payment doctrine, individual inquiries into the voluntariness of all ETFs paid by each putative class member are required.  *See* O.C.G.A. § 13-1-13.  Such individual inquiries are not consistent with the class arbitration criteria in SRCA Rule 4.

On June 24, 2010, the Arbitrator rendered his Class Determination Award granting Thomas' Motion for Class Certification and certifying the following class:

> All consumer subscribers to SouthernLINC's wireless telephone service pursuant to contracts which include an early termination fee provision, and who paid or who have been charged an early termination fee by SouthernLINC after July 31, 2004.[12]

The following findings regarding voluntary payment were critical to this determination:

---

[11]   A copy of SouthernLINC's Opposition to Thomas' Motion for Class Certification is attached as Exhibit 11.  To avoid filing unnecessary material with the Court, SouthernLINC redacted certain material from its Opposition.

[12]   The Arbitrator excluded from the class SouthernLINC itself, any entity in which SouthernLINC has a controlling interest, SouthernLINC's parents, subsidiaries, affiliates, officers, directors, employees, and members of their immediate families, and members of the AAA and their immediate families.

11

> This Arbitrator concludes that Thomas' typicality with respect to the legal question is enough to at least preliminarily satisfy the typicality requirement under AAA Supplemental Rule 4(a)(3). Whether the voluntary payment defense applies as a matter of law is the first threshold issue that this Arbitrator needs to decide when the merits of the claims are addressed. … Granted, determination whether the voluntary payment doctrine does not apply as a matter of law might possibly not be made until a full hearing of the merits, but it is also possible that the statute's legal application can be decided as a bifurcated issue before the factual issues of negligence or knowledge may need to be developed. (This remains to be explored by this Arbitrator and counsel as the case proceeds…).

(Class Determination Award at 16-17.)

SouthernLINC requested the Arbitrator to reconsider both this award and the Clause Construction Award, but the Arbitrator has not done so to date.[13]  In light of the Class Determination Award, SouthernLINC is now faced with the prospect of participating in an expensive class arbitration process that will cause it to incur substantial costs and attorneys' fees as well as expend significant time and resources, a result that is in direct contradiction to the terms of the parties' agreement.  Among other things, SouthernLINC must now engage, through discovery and otherwise, with *each individual class member* with respect to the voluntary payment issue.  SouthernLINC brings this Motion to Vacate in order to

---

[13]  A copy of SouthernLINC's Motion for Reconsideration, Thomas' Opposition, and SouthernLINC's Reply in Support are attached as Exhibit 12.

restore this arbitration to the individualized form to which the parties actually agreed.

## **ARGUMENT**

The Arbitrator's Clause Construction and Class Determination Awards should be vacated because the Arbitrator exceeded his authority when he determined that this arbitration may proceed on a class basis.  Under both federal and Georgia law, arbitration awards may be vacated when an arbitrator exceeds his authority.  The FAA provides in pertinent part that a court may vacate an award where "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(4).  Similarly, the GAC provides that an arbitration award can be vacated where a party is prejudiced by "[a]n overstepping by the arbitrators of their authority or such imperfect execution of it that a final and definite award upon the subject matter submitted was not made."  O.C.G.A. § 9-9-13(b)(3).

The powers of an arbitrator are entirely dependent on the parties' arbitration agreement and applicable law.  *See Totem Marine Tug & Barge, Inc. v. N. Amer. Towing, Inc.,* 607 F.2d 649, 651 (5th Cir. 1979).  A determination that an arbitrator exceeded his powers depends on whether he decided a dispute over which he had no jurisdiction, or granted an award that is prohibited by law.  *See Davis v.*

*Prudential Sec.*, 59 F.3d 1186, 1194 (11th Cir. 1995) ("[T]he law is well-established that an arbitrator 'can bind the parties only on issues that they have agreed to submit to him.'"); *Szuts v. Dean Witter Reynolds, Inc.*, 931 F.2d 830, 831 (11th Cir. 1991); *Liberty Secs. Corp. v. Fetcho*, 114 F. Supp. 2d 1319  (S.D. Fla. 2000), *citing J.A. Jones Constr. Co. v. Flakt, Inc.*, 731 F. Supp. 1061, 1064 (N.D. Ga. 1990).

Because a party cannot be forced to arbitrate based on any basis other than as expressly agreed, any attempt by an arbitrator to force a party to arbitrate on any other basis requires the arbitrator to exceed his power.  9 U.S.C. § 10 and O.C.G.A. § 9-9-13; *see also Stolt-Nielsen S.A. v. Animalfeeds Int'l. Corp.*, 559 U.S. ___, 130 S. Ct. 1758, 1775-76 (April 2010) (vacating an arbitration award that required parties to participate in class arbitration where arbitration agreement was silent as to class arbitration); *Szutz*, 931 F.2d at 831 (finding that because an arbitrator violated the provision of the arbitration agreement he exceeded his authority under 9 U.S.C. § 10);  *Sweatt v. Int'l Dev. Corp.*, 242 Ga. App. 753 (2000) ("An arbitration award should be consistent with terms of the underlying agreement and reflect the 'essence' of that contract.").

In this instance, the Arbitrator exceeded his authority in two ways: first, by construing the parties' agreement to permit class arbitration; and second, by

certifying a class that did not satisfy the applicable criteria for class arbitrations.

Accordingly, both the class Clause Construction Award and the Class

Determination Award should be vacated.

**A.     The Arbitrator Exceeded His Authority By Interpreting The Parties'
        Arbitration Agreement, Which Is Silent As To Class Arbitration, As
        Permitting Class Arbitration.**

The United States Supreme Court issued a ruling on April 27, 2010, that is

directly on point: "[A] party may not be compelled under the FAA to submit to

class arbitration unless there is a contractual basis for concluding that the party

*agreed* to do so." *Stolt-Nielsen*, 130 S. Ct. at 1775 (emphasis in original).  Silence

cannot be construed to constitute such agreement.  *Id.* at 1774-76.  Because the

Clause Construction Award is based solely on a misconstruction of silence, not on

any affirmative agreement to permit class arbitration, and because there was no

such affirmative agreement, the Arbitrator exceeded his authority.  The Clause

Construction Award is ripe for review and must be vacated.  *Id.* at n.2; *Dealer*

*Computer Systems Inc. v. Dub Herring Ford*, 547 F.3d 558, 564 (6th Cir. 2008).

**1.     Agreement To Class Arbitration Cannot Be Inferred From
        Silence.**

It is undisputed that the parties' arbitration agreement in this case is silent on

the subject of class arbitration.  (*See* Clause Construction Award at 2.)  In *Stolt-*

*Nielsen*, the Supreme Court held that requiring a party opposing a clause

construction motion to establish that the parties intended to preclude class arbitration is "fundamentally at war with the foundational FAA principle that arbitration is a matter of consent." *Stolt-Nielsen*, 130 S. Ct. at 1775.  Accordingly, in the absence of a manifested intent to allow class arbitration, a party should not be compelled to arbitrate claims on a class-wide basis. *Id.*  In short, under *Stolt-Nielsen*, silence regarding class arbitration in an arbitration agreement precludes class arbitration.

Following this rationale, the Southern District of New York recently determined that a clause construction award should be vacated where it could not be shown that "the parties manifested any affirmative intention to permit class arbitration." *Jock v. Sterling Jewelers, Inc.*, Case No. 08 Civ. 2875, 2010 U.S. Dist. LEXIS 75064, *13-21 (S.D.N.Y. July 26, 2010).  In *Jock*, the Southern District of New York reconsidered its earlier decision not to vacate a clause construction award and determined that, under *Stolt-Nielsen*, its earlier decision was incorrect because there was no evidence that the parties explicitly or implicitly agreed to class arbitration.  *Id.*  at *20-21.

The Southern District of Florida also recently addressed whether an arbitration clause that is silent as to class arbitration permits class arbitration and held that:

> [U]nless the parties explicitly contract for class-action arbitration, the parties cannot engage in class action arbitration. Here, since the Agreement does not discuss class action arbitration, the parties did not agree to submit to class action arbitration. Plaintiff therefore cannot engage in class action arbitration under this Agreement.

*In re Checking Account Overdraft Litig.*, Case No. 10-22190, 2010 U.S. Dist.

LEXIS 94532, *35 (S.D. Fla. August 2010).

Similar rulings confirming the parties' intent not to permit class arbitration

where agreements were silent on the subject are found in the Second, Third,

Fourth, Fifth, Sixth, Seventh, Eighth, and Eleventh Circuits. [14]   In sum, this body

of case law – now affirmed by the Supreme Court's ruling in *Stolt-Nielsen* –

---

[14]    *United Kingdom v. Boeing Co.*, 998 F.2d 68, 72-73 (2d Cir. 1993); *Johnson v. West Suburban Bank*, 225 F.3d 366, 377 n.4 (3d Cir. 2000), cert. denied, 531 S. Ct. 1145 (2001) (pursuing class actions in arbitral forums "appears impossible to do so unless the arbitration agreement contemplates such a procedure."); *Deiulemar Compagnia di Navigazione S.p.A. v. M/V Allegra*, 198 F.3d 473, 482 (4th Cir. 1999), cert. denied, 529 U.S. 1109 (2000) ("The parties here did not include in their agreement an express term providing for class arbitration. Thus, one could say that through the proper application of 9 U.S.C. § 4, the FAA has already provided the type of procedure to be followed in this case, namely, non-class arbitration."); *Del E. Webb Constr. v. Richardson Hosp. Auth.*, 823 F.2d 145, 150 (5th Cir. 1987) (district court should not have consolidated separate arbitrations where the parties did not consent in writing to consolidation); *American Centennial Ins. v. National Cas. Co.*, 951 F.2d 107, 108 (6th Cir. 1991) ("[a] district court is without power to consolidate arbitration proceedings, over the objection of a party to the arbitration agreement, when the agreement is silent regarding consolidation); *Champ v. Siegel Trading Co.*, 55 F.3d 269, 274-75 (7th Cir. 1995); *Dominium Austin Partners, LLC v. Emerson*, 248 F.3d 720, 728 (8th Cir. 2001) (district court did not err in compelling individual arbitrations where the agreements made no provisions for class arbitrations); *Protective Life Ins. Corp. v. Lincoln Nat'l Life Ins. Corp.*, 873 F.2d 281, 282-83 (11th Cir. 1989) (vacating district court's decision ordering consolidation because the agreement required arbitration only between the parties to that particular agreement).

17

requires interpretation of arbitration agreements based on their explicit terms, and rejects the notion that silence on class arbitration somehow translates into an invitation to engraft a class arbitration clause into such agreements.

The Arbitrator's ruling in this case is exactly contrary to this rule.  The Clause Construction Award finds that the arbitration provision, like the arbitration clause at issue in *Stolt-Nielsen*, "is *silent* with respect to class actions."  (Clause Construction Award at 2 (emphasis added).)  Notwithstanding this silence, the Arbitrator found that the parties' arbitration agreement permitted class arbitration. To reach this conclusion the Arbitrator adopted the very principle that the Supreme Court declared "fundamentally at war with" federal law by requiring SouthernLINC to present evidence that the parties intended to *exclude* arbitration, instead of requiring Thomas to prove that the parties intended to *permit* class arbitration.  (Clause Construction Award at 5; *Stolt-Nielsen*, 130 S. Ct. at 1774-75.) By construing the parties' agreement contrary to law in this manner, the arbitrator exceeded his authority.  *Id*. at 1774-76.

### 2.     The Parties Did Not Agree To Class Arbitration.

Not only did the Arbitrator fail to construe the parties' silence correctly as prescribed by the Supreme Court, but there is also no evidence that the parties in

this case agreed to permit class arbitration.  The Arbitrator found no such evidence in his Clause Construction Award and, indeed, none was presented.[15]

This absence of affirmative evidence permitting class arbitration was alone sufficient to preclude class arbitration, but the record also contained evidence that class arbitration had *not* been intended.  In particular, the dispute resolution procedures specified in the parties' agreement effectively contradict any intent to permit class arbitration.[16]  For example, the agreement specifies the maximum duration of arbitration: the parties have 60 days to hold a hearing and the Arbitrator has 30 days to render an award, for a total of 90 days.  (Demand ¶ 6.)  This speedy process required by the parties' agreement is impossible to achieve under the SRCA procedures.  The SRCA rules not only add the clause construction and class certification briefing and discovery processes to the normal AAA arbitration

---

[15]     Thomas had three opportunities to present evidence proving the parties agreed to permit class arbitration: the Motion for Clause Construction, the Reply in Support of Clause Construction Award, and Thomas's Opposition to SouthernLINC's Motion for Reconsideration. Thomas failed to do so.

[16]     Any construction of such terms must follow the usual rules of contract construction.  It is well-settled under Georgia law that the cardinal rule of contract interpretation is to ascertain the intention of the parties, and to this end whole contract must be considered.  *See In re Estate of Sims*, 259 Ga. App. 786 (2003).  In ascertaining the true intention of the parties, courts must reject a construction which leads to contradiction of the clear terms of the contract.  *Wofac Corp. v. Hanson*, 131 Ga. App. 725, 727-28 (1974).  Additionally, contracts "must be given a reasonable construction which will uphold and enforce the instrument, if possible, rather than a construction which would render it meaningless and ineffective or which would lead to an absurd result."  *See Brown v. Chrysler Corp.*, 112 Ga. App. 22, 23-24 (1965); *see also Rice v. Huff*, 221 Ga. App. 592, 593 (1996).

19

process, but they also provide mandatory stays of 30 days each following the delivery of the Clause Construction and Class Determination Awards.  *See* SRCA Rules 3 and 5.  As this case illustrates all too well, there is simply no way for a class arbitration to proceed within the time frames specified in the parties' agreement.  The process to date has taken two years since Thomas filed his Demand, and the parties are still months, perhaps years, from a final ruling on the merits.

A similar conflict between class arbitration and the parties' arbitration agreement appears in the contractual requirement of good faith negotiations between the parties prior to the submission of any matter to arbitration.  (Demand ¶ 6 and Answer at Counterclaim ¶ 7.)  Permitting class arbitration would effectively eviscerate such an individualized dispute resolution process.  *Jock*, 2010 U.S. Dist. LEXIS 75064 at *20-21 (ruling that an arbitration agreement "requir[ing] claimants to complete a multi-step process before submitting their disputes to an arbitrator," is incompatible with the class arbitration process).

In construing the parties' arbitration agreement to permit class arbitration, the Arbitrator thus adopted a construction that conflicts with the unambiguous terms of the contract - a clear violation of Georgia law.  *Wofac*, 131 Ga. App. at 727-28.  The Arbitrator failed to "give[] a reasonable construction which uph[e]ld

20

and enforce[d] the instrument" and instead provided "a construction which …

render[ed] it meaningless and ineffective." *Brown*, 112 Ga. App. at 23-24.

Accordingly, because the Arbitrator failed to identify a contractual basis for

finding that the parties agreed to permit class arbitration, and because there is no

such contractual basis on which the Arbitrator could have based a conclusion that

the parties agreed to permit class arbitration, the Arbitrator exceeded his authority

and the Clause Construction Award must be vacated. *See Stolt-Nielsen*, 130 S. Ct.

at 1774-75; *Szutz*, 931 F.2d at 831-832; *Sweatt*, 242 Ga. App. at 754-55.

### 3.    The Clause Construction Award Is Now Ripe For Review

Under 9 U.S.C. § 12, a motion to vacate may be filed within three months of

the issuance of a final award.  Interlocutory awards such as the Clause

Construction and Class Determination Awards at issue here have been found to be

ripe for review once class certification has occurred. *See Sutter v. Oxford Health

Plans*, Case No. 05-2198, 2005 U.S. Dist. LEXIS 25792 (D.N.J. October 2005).

Review of the Clause Construction Award prior to the issuance of the Class

Determination Award would not have been ripe under *Dealers Computer Systems

Inc. v. Dub Herring Ford*, in which the Sixth Circuit held:

Dealers[17] may ultimately fail to secure class certification for their claims, thus the potential harm to DCS[18] involved in defending against a class arbitration may never occur. Furthermore, if Dealers obtain class certification, DCS will not suffer any material hardship if this Court denies review at this stage because DCS can still obtain judicial review through Rule 5(d) before actual commencement of class proceedings. Given the weight of these factors, notwithstanding a sufficiently developed factual record, *the Court finds the arbitration panel's Clause Construction Award to be unripe for review.*

547 F.3d 558, 564 (6th Cir. 2008) (emphasis added). *See also Corinthian Colleges, Inc. v. McCague*, Case No. 09-4877, 2010 U.S. Dist. LEXIS 21979 (N.D. Ill. 2010); *Dealer Computer Servs. v. Randall Ford, Inc.*, Case No. 08-2033, 2009 U.S. Dist. LEXIS 8242 (S.D. Tex. 2009); *Marron v. Snap-On Tools, Co.*, Case No. 03-4563, 2006 U.S. Dist. LEXIS 523 (D.N.J. 2006).

Although Thomas attempted to argue before the Arbitrator that SouthernLINC should have challenged the Clause Construction Award immediately, SouthernLINC's decision to await the Class Determination Award was consistent with *Dealer Computer* and with the basic purpose of arbitration: a fast, inexpensive resolution of claims. *See O.R. Secs Inc. v. Professional Planning Assoc.*, 857 F.2d 742, 747 (11th Cir. 1988). As Judge Posner of the Seventh

---

[17]   Dealers was the party seeking confirmation of the clause construction award.
[18]   DCS was the party who petitioned the court to vacate the clause construction award.

Circuit pithily put it, requiring a party aggrieved by an interlocutory order to seek vacatur would result in unnecessary delays in the arbitration process and "invite a judicial proceeding every time the arbitrator sneezes." *Smart v. IBEW, Local 702*, 315 F.3d 721, 725 (7th Cir. 2002); *accord Corinthian Colleges*, 2010 U.S. Dist. LEXIS 21979, *8-10; *Randall Ford, Inc.*, 2009 U.S. Dist. LEXIS 8242, *12-14; *Sutter*, 2005 U.S. Dist. LEXIS 25792.

Both Georgia and federal law are clear that a party does not waive the right to review by failing to seek immediate review of an interlocutory order. *See, e.g.*, *In re Salem*, 465 F.3d 767, 774 (7th Cir. 2006) ("As a general rule, the failure to file an interlocutory appeal does not waive the ability to have an issue reviewed upon final appeal."); *Langfit v. Jackson*, 284 Ga. App. 628, 634 (2007), citing *Bishop Contracting Co. v. Center Bros., Inc.*, 213 Ga. App. 804, 805 (1994).

Accordingly, the Clause Construction Award is now ripe for review and should be vacated.

**B.    The Arbitrator Exceeded His Powers By Certifying A Class That Does Not Meet All Applicable Criteria.**

"The power and authority of the arbitrator in an arbitration proceeding is dependent on the provisions of the arbitration agreement under which the arbitrators were appointed." *Szuts*, 931 F.2d at 831.  As explained in Section A.2. of this brief, the parties did not agree to class arbitration, but if class arbitration

were in fact permissible, the criteria for certifying a class are set forth in Rule 4 of the SRCA. (Class Determination Award at 1.)

Although the Arbitrator recognized that these criteria would apply, both his findings and the record show that SouthernLINC's voluntary payment defense precluded any conclusion that the certified class actually met these criteria. By certifying a class that did not comply with these criteria, the Arbitrator exceeded any class arbitration authority he possessed under the arbitration agreement, even assuming such authority existed.

Rule 4 of the SRCA substantially resembles both Rule 23 of the Federal Rules of Civil Procedure and Rule 23 of the Georgia Civil Practice Act (collectively, "Rule 23"). The Arbitrator and both parties have acknowledged that case law interpreting Rule 23 governs the Arbitrator's interpretation of SRCA Rule 4. (Class Determination Award at 4-5.) The Arbitrator, then, is bound by the requirements of SRCA Rule 4, as informed by case law interpreting Rule 23, in determining whether to certify a class.

SRCA Rule 4(a) is similar to Rule 23(a) and requires a showing that a putative class meets all of the following six factors:

    (1)    <u>Numerosity</u>: the class is so numerous that joinder of separate arbitrations on behalf of all members is impracticable;

24

    (2)    <u>Commonality</u>: there are questions of law or fact common to the class;

    (3)    <u>Typicality</u>: the claims or defenses of the representative parties are typical of the claims or defenses of the class;

    (4)    <u>Adequacy of Party</u>: the representative parties will fairly and adequately protect the interests of the class;

    (5)    <u>Adequacy of Counsel</u>: counsel selected to represent the class will fairly and adequately protect the interests of the class; and

    (6)    <u>Similar Agreement</u>: each class member has entered into an agreement containing an arbitration clause which is substantially similar to that signed by the class representative(s) and each of the other class members.[19]

SRCA Rule 4(b) is similar to Rule 23(b) and requires a showing "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Arbitrators must look to the following factors in making that determination:

    (1)    the interest of members of the class in individually controlling the prosecution or defense of separate arbitrations;

---

[19] SouthernLINC does not challenge numerosity under Rule 4(a)(1), the adequacy of counsel under Rule 4(a)(5), or the similarity of agreements under Rule 4(a)(6). Therefore, those factors are irrelevant to this Motion.

>  (2)    the extent and nature of any other proceedings
>         concerning the controversy already commenced by
>         or against members of the class;
>
>  (3)    the desirability or undesirability of concentrating
>         the determination of the claims in a single arbitral
>         forum; and
>
>  (4)    the difficulties likely to be encountered in the
>         management of a class arbitration.

The burden of showing that each of these criteria has been satisfied is on

Thomas.  SRCA Rule 4; *Gilchrist v. Bolger*, 733 F.2d 1551, 1556 (11th Cir. 1984)

("The burden is on the plaintiff who seeks to certify the suit as a class action to

establish the prerequisites of Fed.R.Civ.P. 23(a)."); *Carnett's, Inc. v. Hammond*,

279 Ga. 125, 127 (2005) ("[P]laintiffs bear the burden of proving that class

certification is appropriate.")

In this case, SouthernLINC's defense under the voluntary payment doctrine

renders it impossible for the putative class to satisfy the SRCA Rule 4

requirements of commonality (4(a)(2)), typicality (4(a)(3)), and predominance

(4(b)).  The voluntary payment doctrine is codified at O.C.G.A. § 13-1-13, as

follows:

>  Payments of claims made through ignorance of the law or
>  where all the facts are known and there is no misplaced
>  confidence and no artifice, deception, or fraudulent
>  practice used by the other party are deemed voluntary
>  and cannot be recovered unless made under an urgent and

26

> immediate necessity therefor or to release person or property from detention or to prevent an immediate seizure of person or property.

In other words, when a party voluntarily makes a payment to another party, and there is no fraud or deception, then such payments cannot be recovered. *See, e.g., Telescripps Cable Co. v. Welsh*, 247 Ga. App. 282 (2001) (holding that the voluntary payment doctrine applied to a parties' payment even if the fee charged was an unlawful penalty); *Liberty Nat. Life Ins. Co. v. Radiotherapy of Ga.*, 252 Ga. App. 543 (2001) (holding that the voluntary payment doctrine barred recovery of excessive Medicare payments).

SouthernLINC raised this defense in its Brief in Opposition to Thomas' Motion for Class Certification. In essence, SouthernLINC's point is that Thomas and others voluntarily paid the ETFs in question, without fraud or deception by SouthernLINC, and are therefore barred from recovering them. *See* O.C.G.A. § 13-13; (SouthernLINC Opposition to Thomas' Motion for Class Certification at 13, 19-21, and 26-27.) This defense completely removes from consideration what the Arbitrator termed "the overriding common legal question": whether the ETF is a valid liquidated damages clause or a penalty. (Class Determination Award at 9.) For all class members who voluntarily paid the ETF, SouthernLINC has a complete defense against them because the voluntary payment doctrine eliminates

27

any possible recovery.  For all such putative claimants, the issue of whether the

ETF is legal or illegal is absolutely irrelevant because the legality of the fee has no

bearing on the voluntary payment doctrine.  Those class members who voluntarily

paid cannot now be heard to complain that the ETF was an illegal penalty.

*Telescripps Cable*, 247 Ga. App. at 285-86.

The significance of SouthernLINC's voluntary payment defense to the

SRCA Rule 4 criteria is that it requires an individual inquiry into the reasons why

each class member paid each ETF.  *See* O.C.G.A. § 13-1-13.  In particular, the

defense requires examination of each class member's state of mind at the time of

payment and inquiry into all statements made by SouthernLINC to each class

member that may give rise to allegations of fraud, deception, and/or duress with

respect to such class member.  *Id.*  Such individualized inquiries are contrary to the

class arbitration process because they raise factual issues that must be determined

on an individualized basis.  Common evidence cannot reveal whether individual

payments were made fraudulently, under duress, or due to a mistake of fact.

*Gawry v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 942, 953 (N.D. Ohio

2009) (denying class certification, in part, because the application of the voluntary

payment doctrine would require the court to analyze individual intent of each class

member); *accord Camafel Bldg. Inspections, Inc. v. BellSouth Advertising and*

*Publ. Corp.*, No. 1:06-1501, 2008 U.S. Dist. LEXIS 18192, * 32-33 (N.D. Ga.

2008); *Endres v. Wells Fargo Bank*, No. C 06-7019 PJH, 2008 U.S. Dist. LEXIS

12159, *11-12 (N.D. Cal. 2008); *Morrissey v. Nextel Partners, Inc.*, 22 Misc. 3d

1124A (N.Y. Sup. Ct. 2009).  The presence of a voluntary payment defense has

therefore expressly been found to preclude class certification in cases involving

claims to recover ETFs governed by Georgia law.  *Camafel Bldg.*, 2008 U.S. Dist

LEXIS 18192, *32-33.

The reasons SouthernLINC's voluntary payment defense precludes Thomas

from satisfying his burden of establishing commonality, typicality, and

predominance are further explained below.

i.      *Commonality*

Class certification requires that there be "questions of law or fact common to

the class."  Rule 4(a)(2).  However, the commonality requirement is not met where

evidence specific to each individual class member would be necessary for a fair

trial.  *See Hehir v. Shell Oil Co.*, 72 F.R.D. 18, 21-22 (D. Mass. 1976) (finding no

commonality where individualized evidence required by each class member).

Class certification is not appropriate where the determination of liability and

damages will require a mini-trial for each member of the class.  *See Windham v.*

*Am. Brands, Inc.*, 565 F.2d 59, 66-67 (4th Cir. 1977).  *See also Duffy v. Landings*

29

*Ass'n*, 254 Ga. App. 506, 508-09 (Ga. App. 2002) ("A class action is not authorized when the issue presented must be resolved on a case-by-case basis and the resolution of individual questions plays such an integral part in the determination of liability.") (internal citations omitted).

Ignoring this case law, the Arbitrator concluded that Thomas satisfied commonality because "whether the voluntary payment doctrine applies at all is another common legal question that applies to all putative class members who paid the ETF." (Class Determination Award at 12.)  This is false logic that evades the real question.  The fact that each claimant faces a common legal question does not negate the fact that each claimant will have to do so based on his or her own individualized facts and evidence.  "Not every common question [] will suffice…. [A]t a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality.  What [courts look] for is a common issue the resolution of which will advance the litigation." *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998).  Here, the Arbitrator generalized the purportedly common question and completely ignored the essential point that SouthernLINC's voluntary payment defense turns on individualized facts that by definition are *uncommon* to all class members.  Whether these class members voluntarily paid the ETF is a factual issue that must be decided on a person-by-

person basis. *Gawry* 640 F. Supp. 2d at 953 (denying class certification, in part, because the application of the voluntary payment doctrine would require the court to analyze individual intent of each class member); *accord Camafel Bldg.*, 2008 U.S. Dist. LEXIS 18192, * 32-33; *Endres*, 2008 U.S. Dist. LEXIS 12159, *11-12; *Morrissey*, 22 Misc. 3d 1124A. This evasion of the commonality requirement exceeded the Arbitrator's authority.

In addition, the common legal question identified by the Arbitrator – whether the ETF is an illegal penalty – is not in fact common to those who voluntarily paid because that question is irrelevant where the voluntary payment doctrine applies. If the voluntary payment doctrine does, in fact, apply to any class member, the class as defined lacks commonality. For these reasons, the Arbitrator exceeded his powers in certifying this class. *See Totem Marine*, 607 F.2d at 651-52 (vacating arbitration award where arbitrator exceeded powers by failing to follow the rules contained in the parties' arbitration agreement); *Szutz*, 931 F.2d at 831 (same); *Cat Charter L.L.C. v. Schurtenberger*, 691 F. Supp. 2d 1339, 1334-45 (S.D. Fla. 2010) (same); *Sweatt*, 242 Ga. App. at 754-55 (same).

ii.    *Typicality*

The typicality criteria for class certification requires that Thomas' claims be "typical of the claims of the class." SRCA Rule 4(a)(3). "A class representative

31

must possess the same interest and suffer the same injury as the class members in order to be typical." *Cooper v. Southern Co.*, 390 F.3d 695, 712 (11th Cir. 2004). Typicality is not present where the named representative's claim is subject to unique legal and factual defenses. *See In re HealthSouth Corp. Securities Lit.*, 213 F.R.D. 447, 459 (N.D. Ala. 2003) (finding that the class representative's claims were subject to unique defenses "so that their claims cannot be typical of the proposed class"); *see also Jones v. GPU, Inc.*, 234 F.R.D. 82, 98 (E.D. Pa. 2005) ("Where the defendant can raise unique defenses to each plaintiff's claim, typicality may not exist if the defenses could threaten to become the focus of the litigation."); *Zenith Laboratories, Inc. v. Carter-Wallace, Inc.*, 530 F.2d 508, 512 (3d Cir. 1974) (holding that "defenses [] which would not be applicable to the class as a whole" defeat certification).

Thomas admitted that he knew he was subject to the ETFs, that he knew he would be charged an ETF, and that he voluntarily paid the ETF.  (Thomas Tr. 53:19-54:22.)[20]  Specifically, Thomas testified as follows:

> Q:     What I'm focused on now is just the issue of, do we pay this bill or do we not pay it, the one that actually got paid.  Because you had a bill that came into your household that got paid, right?

---

[20]     A copy of Mr. Thomas' deposition transcript is attached as Exhibit K to Thomas' Brief in Support of Class Certification, which is attached to this Memorandum as Exhibit 5.

A:     Right.

Q:     Do you know if that bill was on any kind of automatic debit payment system through your bank or did somebody have to write out a check to pay it?

A:     I believe [my wife] wrote a check.

Q:     All right.  So prior to the time your wife wrote that check, did you have a conversation with her about whether or not to write that check and send in a payment?

A:     No.

Q:     Prior to the time your wife wrote that check, were you aware that you had been charged an ETF?

A:     Well, I mean I didn't see the bill.  I know that I was being charged an ETF.  I didn't know when the bill would come in.

Q:     So you were aware that at some point you were going to get a bill that charged you an ETF?

A:     Right.

Q:     And then the bill came in, whether you knew about it or not, and your wife wrote a check and paid the bill?

A:     Right.

(*Id.*)

Thomas cannot and has not claimed that SouthernLINC misled him as to the nature of the fee, or that SouthernLINC convinced him that he would not be

33

charged the fee.  Thomas knowingly allowed the fee to be paid, taking no action

whatsoever to see that it was not paid.  Accordingly, the voluntary payment

doctrine bars Thomas's recovery.  *See* O.C.G.A. § 13-1-13.  *See also Telescripps*

*Cable,* 247 Ga. App. at 283-85; *Cotton v. Med-Cor Health Info. Solutions*, 221 Ga.

App. 609, 611 (1996).

Thomas' individual claim is thus subject to a defense that may or may not

apply to the claims of all purported class members; his claim is therefore not

typical of the claims of the purported class.  *See Ritti v. U-Haul Int'l. Inc.*, No. 05-

4182 2006 U.S. Dist. LEXIS 23393 at *21-24 (E.D. Pa. 2006) (denying class

certification where named plaintiff's claim are subject to a unique defense and

were atypical of the class); *Hively v. Northlake Foods, Inc.*, 191 F.R.D. 661, 668

(M.D. Fla. 2000) (denying class certification due to lack of typicality where named

plaintiff's claims were "subject to unique defenses that could be central to the

litigation.").  Moreover, to the extent class members allege that their ETF

payments were *involuntary*, and thus not subject to the voluntary payment doctrine,

then Thomas' claim would likewise be atypical.  He does not allege any

involuntary payment.

Ignoring these key points, the Arbitrator concluded that "Thomas' typicality

with respect to the legal question is enough to at least preliminarily satisfy the

34

typicality requirement under [SRCA 4(a)(3)]," notwithstanding that the Arbitrator also concluded that "from a factual standpoint…[Thomas] may not be typical because individual questions about negligence and knowledge need to be explored." (Class Certification Award at 16.)  In other words, the Arbitrator concluded that the voluntary payment doctrine raised individualized issues that precluded typicality, but nevertheless certified a class.  By effectively ignoring the typicality requirement, the Arbitrator exceeded his authority.  *Totem Marine*, 607 F.2d at 651-52 (vacating arbitration award where arbitrator exceeded powers by failing to follow the rules contained in the parties' arbitration agreement); *Szutz*, 931 F.2d at 831 (same); *Cat Charter*, 691 F. Supp. 2d at 1334-45 (same); *Sweatt*, 242 Ga. App. at 754-55 (same).

   iii.    *Predominance*

   A class may not be certified where individual issues predominate.  *Babineau v. Federal Express Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009).  "Whether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action."  *Vega v. T-Mobile USA Inc.*, 564 F.3d 1256, 1270 (11th Cir. 2009) (quoting *Klay v. Humana*, 382 F.3d 1241, 1255 (11th Cir. 2004)).  "[C]ommon issues will not predominate over individual questions if, 'as a practical matter, the

resolution of [an] overarching common issue breaks down into an unmanageable variety of individual legal and factual issues.'" *Babineau*, 576 F.3d at 1191 (quoting *Andrews v. Am. Tel. & Tel. Co*., 95 F.3d 1014, 1023 (11th Cir. 1996)).

Here, individual issues will overwhelmingly predominate over common class issues.  There is simply no way that each subscriber's intent in entering into an agreement or actually paying an ETF can be determined on a uniform, class-wide basis.  Instead, Thomas' claim, and the claim of each class member, "will stand or fall on the Court's resolution of the highly individualized voluntary payment issue." *Camafel Bldg.*, 2008 U.S. Dist. LEXIS 18192 *32-33.  *See also Spagnola v. Chubb Corp.*, Case No. 06-civ-9660, 2010 U.S. Dist. LEXIS 1115, *64-67 (S.D.N.Y. 2010) (denying class certification, in part, because the application of the voluntary payment doctrine would require the court to analyze individual intent of each class member and therefore class issues did not predominate); *Gawry*, 640 F. Supp. 2d at 953 (same).

Ignoring the individual inquiries required by the voluntary payment doctrine, the Arbitrator concluded that for the same reasons "that the voluntary payment defense did not undermine typicality, this Arbitrator also preliminarily concludes that the common issues on the voluntary payment defense predominate over the individual questions with respect to the paying class members…."  (Class

36

Determination Award at 20.)  Accordingly, the Arbitrator's predominance analysis suffers from the same defect as the Arbitrator's typicality analysis: it sidesteps the essential question and thereby ignores the predominance requirement.  This approach exceeded the Arbitrator's authority.  *Totem Marine*, 607 F.2d at 651-52 (vacating arbitration award where arbitrator exceeded powers by failing to follow the rules contained in the parties' arbitration agreement); *Szutz*, 931 F.2d at 831 (same); *Cat Charter*, 691 F. Supp. 2d at 1334-45 (same); *Sweatt*, 242 Ga. App. at 754-55 (same).

### 2.    The Arbitrator Exceeded His Powers By Issuing A Conditional Certification.

SRCA Rule 4 provides that "[t]he arbitrator shall permit a representative to [represent a class] only if each of the [Rule 4] conditions is met."  In making a determination of whether Thomas satisfied SRCA Rule 4, the Arbitrator, like a district court applying Rule 23, is thus required to make a determination that ***all*** requirements have been met and is not permitted to issue a conditional certification.[21]  "A court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met."  Fed. R. Civ. P. 23, advisory committee's note, 2003 Amendments; *see also* 5 *Moore's Federal*

---

[21]    As previously noted, authorities construing Rule 23 are agreed by the parties and the Arbitrator to be applicable to SRCA Rule 4.  Class Determination Award at 1.

*Practice* § 23.80[2] (Matthew Bender 3d ed.); Wright, Miller & Kane *Federal Practice and Procedure* Civil 3d § 1785.4.  In 2003, Rule 23 was amended to eliminate the language that had appeared in Rule 23(c)(1) providing that a class certification "may be conditional."  *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 319 (3rd Cir. 2008); 5 *Moore's Federal Practice* § 23.80[2]; *Federal Practice and Procedure* Civil 3d § 1785.4.  The provision was eliminated "to avoid the unintended suggestion, which some courts have adopted, that class certification may be granted on a tentative basis, even if it is unclear that the rule requirements are satisfied."  *Report of the Judicial Conference Committee on Rules of Practice and Procedure to the Chief Justice of the United States and Members of the Judicial Conference of the United States* (2002); *see also In re Hydrogen Peroxide*, 552 F.3d at 319.  This amendment makes absolutely clear that the arbitrator must "consider carefully all relevant evidence and make a definitive determination that the requirements of Rule 23 have been met before certifying a class."  *In re Hydrogen Peroxide*, 552 F.3d at 320; *see also* 5 *Moore's Federal Practice* § 23.80[2]; *accord In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 596 (3d Cir. 2009) ("Unless each requirement of *Rule 23* is actually met, a class cannot be certified.").  "[B]ecause each requirement of Rule 23 must be met, a district court errs as a matter of law when it fails to resolve a genuine legal or factual dispute

relevant to determining the requirements." *In re Hydrogen Peroxide*, 552 F.3d at 320; *In re Schering Plough*, 589 F.3d at 596.

The Second Circuit in *Hydrogen Peroxide* vacated an order certifying a class because the district court certified a class without determining definitively that each requirement of Rule 23 was met. *Id.* at 321. The lower court based its decision, in part, on plaintiff's "intention to prove a significant portion of their case through factual evidence and legal arguments common to all class members." *Id.* The Second Circuit rejected that standard and held that "[i]t is incorrect to state that a plaintiff need only demonstrate an 'intention' to try the case in a manner that satisfies the [requirements of Rule 23]." *Id.* The Second Circuit similarly rejected the district court's view that a "threshold showing" of the Rule 23 requirements was sufficient: "The requirements of Rule 23 must be met, not just supported by some evidence." *Id.* In fact, the Second Circuit held, the 2003 amendment requires a court to "reject tentative decisions on certification and encourage development of a record sufficient for informed analysis." *Id.*

Similarly, the Third Circuit in *In re Schering Plough* held that "a district court errs as a matter of law when it fails to resolve a genuine legal or factual dispute relevant to determining the requirements" and found that the district court

did not sufficiently resolve disputes relevant to the typicality and adequacy requirements of Rule 23.  589 F.3d at 596-602.

In the present case, the Arbitrator has similarly failed to determine that each requirement of SRCA Rule 4 was definitively established by Thomas.  In particular, the Arbitrator failed to rule on the applicability of the voluntary payment doctrine, which precluded a final determination on the commonality, typicality, and predominance requirements.  As the Arbitrator noted, the "overriding common legal question" is whether the ETF "is a valid liquidated damages clause or a penalty."  (Class Determination Award at 9.)  However, SouthernLINC has a complete defense under the voluntary payment doctrine to all claims of purported class members who voluntarily paid the ETF.  Whether the voluntary payment doctrine applies is the threshold question in the class determination inquiry, as it will determine the outcome of the typicality analysis under SRCA Rule 4(a)(3), the predominance analysis under SRCA Rule 4(b)(1), and the commonality analysis under SRCA Rule 4(a)(2).  Without a final determination on whether the voluntary payment doctrine applies, no final determination can be issued on typicality, predominance, or commonality.

By failing to resolve these issues and by certifying the class conditionally, the Arbitrator exceeded his authority.  *See In re Hydrogen Peroxide*, 552 F.3d at

40

320; *In re Schering Plough*, 589 F.3d at 596; 9 U.S.C. § 10(a)(4).  The Class

Determination Award should therefore be vacated.  *See Totem Marine*, 607 F.2d at

651-52 (vacating arbitration award where arbitrator exceeded powers by failing to

follow the rules contained in the parties' arbitration agreement); *Szutz*, 931 F.2d at

831 (same); *Cat Charter*, 691 F. Supp. 2d at 1334-45 (same); *Sweatt*, 242 Ga. App.

at 754-55 (same).

## <u>CONCLUSION</u>

For the foregoing reasons, Applicant SouthernLINC respectfully moves this

Court for an order vacating the Arbitrator's Clause Construction Award and Class

Determination Award on the grounds that both arbitration awards are in excess of

the Arbitrator's authority.

**Intentionally Left Blank – Signatures on Following Page**

41

Respectfully submitted this 17th day of September, 2010.

TROUTMAN SANDERS LLP
/s/ Robert P. Williams II _____
Robert P. Williams II, Georgia Bar No. 765413
John P. Hutchins, Georgia Bar No. 380692
Benjamin A. Gastel, Georgia Bar No. 432776
Attorneys for Respondent
Southern Communications Services, Inc. d/b/a
SouthernLINC Wireless

5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, GA 30308-2216
Phone: (404) 885-3000
Fax: (404) 885-3900

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SOUTHERN COMMUNICATIONS  SERVICES, INC. D/B/A SOUTHERNLINC WIRELESS, | ) ) ) |
| Applicant. | ) ) |
| -against- | ) ) |
| DEREK THOMAS, individually And on behalf of others similarly situated, | ) ) ) |
| Respondent, | ) ) ) |

CIV CASE NO
_____

## CERTIFICATE OF SERVICE

I certify that I have this day served upon counsel for all parties a copy of the foregoing MEMORANDUM IN SUPPORT OF SOUTHERN COMMUNICATION SERVICES, INC. D/B/A/ SOUTHERNLINC WIRELESS' MOTION TO VACATE CLAUSE CONSTRUCTION AND CLASS DETERMINATION AWARDS by electronic and U.S. mail as follows:

Paul M. Weiss – paul@freedweiss.com
Eric C. Brunick – ericb@freedweiss.com
Freed & Weiss LLC
111 West Washington Street, Suite 1331
Chicago, IL 60602

Alan G. Snipes – alansnipes@pmkm.com
Wade H. Tomlinson, III –
triptomlinson@pmkm.com
Mike McGlamry –
mmcglamry@pmkm.com
Pope McGlamry Kilpatrick & Norwood, LLP
Synovus Centre
1111 Bay Avenue, Suite 450
Columbus, GA 31901

Jeffery P. Harris –                          Jim S. Calton, Jr. –
jharris@statmanharris.com                    caltonlaw@eufaula.rr.com
Elizabeth Hutton –                           Calton & Calton
lhutton@statmanharris.com                    226 East Broad Street
Statman, Harris & Eyrich, LLC                Eufaula, Alabama 36027
441 Vine Street, 3700 Carew Tower
Cincinnati, OH 45202

 This 17th day of September 2010.

                                   /s/ Robert P. Williams_____
                                   Robert P. Williams II, Georgia Bar No. 765413