# EXHIBIT 1

## To SouthernLINC's Memorandum in Support of Motion to Vacate

BEFORE THE
AMERICAN ARBITRATION ASSOCIATION

DEREK THOMAS, Individually and on )
behalf of Others similarly situated, )
 )
    Claimant, ) No. 11 494 01518 08
 )
 )
vs. )
 )
SOUTHERN COMMUNICATIONS SERVICES, )
INC. d/b/a SOUTHERNLINC WIRELESS, )
 )
    Respondent. )

## PRE-HEARING ORDER NO. 4

### Partial Final Clause Construction Award

This matter is before this Arbitrator pursuant to Rule 3 of the American Arbitration Association ("AAA") Supplementary Rules for Class Arbitrations ("Supplementary Rules") dated October 8, 2003 for a determination whether the applicable arbitration clause permits the arbitration to proceed on behalf of a class.

Claimant filed a Motion; Respondent filed a Brief in Opposition; and Claimant filed a Reply. In January, 2009, this Arbitrator asked counsel to provide supplemental briefs on certain issues. The parties completed that briefing in February 2009. No oral argument on the Motion was held, as this Arbitrator concluded that none was necessary.

Based on the parties' submissions, and for the reasons stated below, this Arbitrator concludes that the parties' arbitration clause permits the arbitration to proceed on behalf of a class under AAA Supplementary Rule 3.

### The Parties' Pending Claims

Claimant's Demand for Arbitration seeks damages and other equitable relief arising out of the Respondent's charges of early termination fees ("ETF") and/or early cancellation fees under the Customer Agreement Terms & Conditions (the "Agreement") governing Claimant's wireless services. Claimant Derek Thomas was a subscriber to the wireless telephone services of Respondent and entered into that Agreement. As a term and condition of service, the Agreement stated that if the Agreement was terminated prior to the end of the initial term, then Thomas (and other subscribers) owe an ETF of $200 per handset. Thomas entered into an initial service contract for cell phone services in 2005, and added second and third lines of service in 2006 and 2007, respectively. Thomas cancelled his service in March 2008. Respondent admits that it charged Claimant and other customers an ETF upon cancellation of their wireless services before the end of the service plan term. Respondent'

services were provided throughout the southern United States, including Georgia, Alabama, northwest Florida and southeast Mississippi.

Claimant also alleges, but Respondent denies, that the ETF is not a reasonable measure of Respondent's anticipated or actual loss but rather is an unlawful penalty. Thomas also alleges, but again Respondent denies, that Respondent's ETF is an unlawful penalty under Georgia law and is therefore void and unenforceable; is unjust, unreasonable and unlawful under the Federal Communications Act of 1934, 47 U.S.C. § 201, *et seq.*; that Respondent has been unjustly enriched; and Claimant and the class have suffered both monetary and non-monetary injuries as a result of Respondent's imposition of the ETFs. Accordingly, Claimant seeks declaratory and injunctive relief, as well as monetary damages or disgorgement. Respondent denies that Claimant is entitled to any such relief.

Respondent has filed a Counterclaim for breach of contract based upon Claimant's failure to pay the ETF with regard to one of his three lines. Respondent seeks compensatory, incidental and consequential damages, and other relief Claimant admits that he refused to pay "an ETF charge," but counters that the ETF charge was unlawful.

## The Arbitration Clause

The arbitration clause in the Agreement states:

17. Arbitration. The parties will make good faith attempts to resolve any disputes. If the parties cannot resolve the dispute within 60 days after the matter is submitted to them, then, unless otherwise agreed, the parties will submit the dispute to arbitration. The parties will request that arbitrator(s) hold a hearing within 60 days following their designation, and render a final and binding resolution within 30 days after the hearing. The parties will conduct the arbitration in Atlanta, Georgia, pursuant to applicable Wireless Industry Arbitration Rules of the American Arbitration Association.

As is readily apparent, the arbitration clause is silent with respect to class actions. The Agreement (¶ 18.) also provides that it is governed by Georgia law.

## AAA Supplementary Rule 3

AAA Supplementary Rule 3 makes this Clause Construction Award a first step in any AAA class action proceeding. Supplementary Rule 3 states:

Upon appointment, the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class.

The parties do not dispute this Arbitrator's jurisdiction to decide this threshold issue. Nor should they, as the Supreme Court stated in *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003) ("*Bazzle*"), that the "question here [of] what *kind of arbitration proceeding the parties agreed to*" is a decision for the arbitrator. *Id.* at 447, *452*, *453*, *454* (emphasis

original).

Following the issuance of the Clause Construction Award, the arbitrator must stay all proceedings for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or vacate the Clause Construction Award. Supplementary Rule 3 additionally states under what circumstances the arbitration may proceed, depending upon whether judicial review of the Clause Construction Award is sought and a ruling is issued by the court.

AAA Supplementary Rule 3 explicitly instructs the arbitrator to "not consider the existence of these Supplementary Rules" as a factor in rendering a Clause Construction Award. Nonetheless, the question arises as to what Supplementary Rule 3 means by "permits" in the phrase "whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class ...."

"Permits" has a wide range of meanings, giving support to both sides for their respective arguments. Black's Law Dictionary alternatively defines it as (1) to consent to formally, (2) to give opportunity for (as "lax security permitted the escape"), and (3) to allow or admit of (as "the law so permits"). (8th Ed., p. 1176.) The first definition seemingly supports Respondent, as Supplementary Rule 3 would then require the arbitration clause to expressly provide for class arbitration. The second definition helps Claimant, particularly since the example indicates that "permits" includes the failure to prevent something. The third definition and its example refers the parties and this Arbitrator to case law on the subject.

There are also different views from the Supreme Court. Justice Stevens' concurring opinion in *Bazzle* indicates that something is "permitted if not prohibited," whereas the dissent by then-Chief Justice Rehnquist states that a right does not exist if it is not expressed ("do by their terms permit"). 539 U.S. at 454-455. Thus, here too, there is support for both Claimant and Respondent. The parties did not engage in this analysis.

This Arbitrator concludes that under Supplementary Rule 3, "permits" means either allowed as a matter of contract interpretation or based upon a statute or case authority. The parties' respective submissions have intuitively adopted that approach in their arguments.

### The Parties' Positions

In general, Claimant contends that the arbitration clause permits class arbitration because: (1) other AAA clause construction awards have so held; (2) under Georgia contract law, the broad language of the arbitration clause indicates that the parties intended to permit class arbitration; and (3) barring class arbitration would deny Claimant and the proposed class any vehicle to vindicate their individual small claims.

Respondent generally contends that: (1) under Georgia contract law, the unambiguous arbitration clause indicates that the parties intended to preclude class arbitrations because the clause provides for only one set of rules – the Wireless Industry Arbitration Rules of the AAA – to govern the arbitration process to the exclusion of any

3

other; (2) the arbitration clause contemplated only one-to-one dispute resolution; (3) disallowance of class arbitration would not limit the remedies of Claimant or the class because class treatment is merely a procedure for obtaining a remedy, not a remedy itself; (4) the AAA precedent cited by Claimant is not persuasive; and (5) the Federal Communications Act bars Claimant from layering a class arbitration procedure upon the Agreement's terms.

## Analysis And Discussion

This Arbitrator concludes that class arbitration is permitted by the arbitration clause under Georgia authority on class arbitrations, United States Supreme Court precedent on arbitration, and Georgia rules of contract construction.

The Precedent Of Other Arbitration Awards. Neither Claimant nor Respondent cited law indicating whether prior AAA clause construction awards should or should not be precedential. Although the six or so clause construction awards cited by Claimant might be precedent if they were confirmed by a court, and therefore became a judgment, neither side has shown whether that is or is not the case.

This Arbitrator concludes that prior unconfirmed clause construction awards have little precedential value for purposes of this Clause Construction Award. Accordingly, it is not necessary for this Arbitrator to determine whether such precedent is apt or distinguishable. Rather this Clause Construction Award is based solely upon this Arbitrator's analysis of the facts and law applicable to the parties' Agreement here. Of course, some of the issues discussed below have previously been addressed by this Arbitrator in other AAA class action proceedings, so it will not be surprising that the conclusions here may overlap with some of those, even if they have not been confirmed by a court.

The Scope Of The "Any Disputes" Clause. This Arbitrator does not agree with Claimant that the "any disputes" language in the arbitration clause was intended to include all procedural mechanisms – such as class action – to process claims. Rather, this Arbitrator construes the "any disputes" clause to mean only the substantive legal grounds upon which the claims are based, such as contract, tort, or statutory violation. Class procedures are just that – a procedure, not a remedy.

Conversely, this Arbitrator does not agree with Respondent that the clause is narrowed by "the parties" language such that arbitration is limited to individual actions brought by one subscriber at a time against DCS. The majority decision in *Bazzle* gives guidance. The agreement in *Bazzle* also used "parties" and "this contract" in the arbitration clause. 539 U.S. at 448. The majority did not believe, however, that language just meant individualized arbitration. *Id.* at 451. Had the *Bazzle* majority adopted the point that Respondent makes here, there would have been no reason to refer the matter to the arbitrators for contract interpretation. Thus, this Arbitrator concludes that "parties" used in the arbitration agreement does not alone preclude class arbitration.

Moreover, where each of the members of the putative class is a party to the subscriber Agreement, class arbitration is still consistent with the contract's language. A class

4

arbitration still permits the disputes and claims to be arbitrated between "the parties," albeit on a combined or collective basis. Had Respondent wanted only a one-on-one dispute resolution process, it should have clearly stated – but did not – that arbitration was "just" or "solely" between these parties and not on a collective or consolidated basis.

Respondent also contends that permitting class arbitration would "effectively eviscerate the preconditions" of good faith attempts by the parties to resolve disputes pre-arbitration. (See Agreement, ¶17.) Neither side has effectively established whether, under Georgia law, that clause in the Agreement is or is not an enforceable precondition. *Holt & Holt, Inc. v. Chote Construction Co.*, 271 Ga. App. 292 (2004), did not determine what constitutes good faith attempts as a precondition to arbitration. In any event, it is fairly clear from Respondent's pleadings, including the filing of the counterclaim, that Respondent was unlikely to forgive scores, hundreds, or perhaps even thousands of ETF's if the subscribers individually contended that the ETFs were unlawful under Georgia law or the FCA. In other words, it is the futility of each putative class member going through the "good faith attempts" that makes that arguable precondition ineffective. It is not rendered ineffective by the class arbitration process.

Application Of Georgia Contract Construction Law. The parties take opposite positions on whether the arbitration clauses' silence on class arbitration does or does not create an ambiguity. This Arbitrator concludes, however, that this is not the controlling issue. Rather, this Arbitrator believes that the critical question is whether it was incumbent upon Respondent to expressly preclude class arbitration, or whether the absence of express inclusion means that it is not permitted. This Arbitrator adopts the former, and concludes that class arbitration is permitted under this arbitration clause because it was not expressly barred.

This Arbitrator bases that conclusion on various factors. First, a fundamental principle of contract construction is that a contract is to be construed against the drafter. Respondent does not deny that it exclusively prepared the Agreement. Where a contract is silent on an issue, it is fairer to construe it so that the drafter loses benefits that it may have been aware of but did not expressly preserve. See *Mastrobouno v. Shearson Lehman Hutton, Inc., et al.*, 514 U.S. 52, 64 (1995), holding that the court would not impute any intent to the non-drafters to give up unknown rights that were not expressly disclosed or discussed in the contract. In other words, the non-drafter gets the benefit of the doubt. *Id.* Applied here, it is fair to conclude that the intent was not to bar class arbitration.

Second, established Supreme Court precedent states that if there is any doubt about the scope of arbitrable issues, it should be resolved in favor of arbitration. *Bazzle, supra,* at 452; *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). Of course, the precise issue here is not whether there should be arbitration, but rather what kind of arbitration. *Bazzle* at 452. Nonetheless, this Arbitrator believes that the principle of resolving doubts in favor of arbitration applies equally to the type of arbitration, particularly where (as discussed below) denying a class arbitration may significantly impair the rights and opportunities of the hundreds of subscribers to bring any arbitration at all.

Indeed, in and before 2005, when Claimant first subscribed for services from

Respondent, the Supreme Court addressed class action arbitration in *Southland Corp. v. Keating*, 465 U.S. 1 (1984). While *Keating* did not directly address whether the class action aspect of the decision was correct, the decision prominently raised class action arbitration as a recognized practice. Moreover, the Supreme Court in *Bazzle* found that class arbitration was permissible even though the contracts there dated back to the mid-1990s. 539 U.S. at 447, 449. Thus, class arbitration was mainstream when the contracts governing this class became effective, and it was Respondent's drafting responsibility to preclude class claims if that was the intent.

Respondent also argues that allowing class arbitration effectively modifies the parties' Agreement by adding a term, and that cannot be done under preemption principles governing the Federal Communications Act ("FCA"). *Boomer v. AT&T Corp.*, 309 F. 3d 404 (7" Cir. 2002). This Arbitrator concludes that *Boomer* does not compel a finding that class arbitration is not permitted. In *Boomer*, preemption applied to bar a challenge to a term already in the parties' contract. Here, in contrast, there is nothing in the parties' Agreement that addresses class action –the clause is silent – so allowing class arbitration does not undermine an express term governing the class and Respondent. It might be different if Respondent had an express class action waiver that this Arbitrator was being asked to strike, but that is not the case here. Rather, the allowance of a class proceeding merely adds a procedural mechanism. It does not, as in *Boomer*, apply state law to alter or challenge the validity of the terms of the Agreement. *Id.* at 418-419. Similarly, it is therefore not an improper rewriting of the parties' Agreement, as Respondent suggests. (Opp., p. 3.)

Thus, this Arbitrator construes the arbitration clause under Georgia contract law to find that it permits class arbitration because the clause does not expressly exclude it.

Permitting Claimant And The Class To Vindicate Their Rights. Since Georgia law applies, the decision in *Dale v. Comcast Corporation*, 498 F. 3d 1216 (11 " Cir., 2007), strongly supports the finding that this arbitration clause permits class arbitration. In *Dale*, a consumer brought a class action against a cable television service provider, alleging breaches of state law based on the Cable Communications Policy Act of 1984, 47 U.S.C. § 521, *et seq.*, a sister provision of the FCA that Claimant bases his claims on here. Also as here, the claim in *Dale* was for improper imposition of fees. Although *Dale* primarily dealt with the unconscionability of a class action waiver, a key factor in its decision was that the class representative's and other class members' claims were only $ 10.

*Dale* held that, under such circumstances, barring a class arbitration prevents the plaintiff – and the rest of the class – from vindicating their rights for the particular claim in a cost-effective manner. 498 F. 3d at 1223-1224. Thus, the right to seek class-wide redress becomes a substantive right, not just a procedural device. That is especially the case where the complexity of the case required legal representation, and there is merely a potential to recover attorney's fees. *Id.* at 1222-1223. As a result, *Dale* declared the class action waiver unconscionable.

*Dale* strongly suggests, under Georgia law, that class actions are permitted – and even favored – when individual class member's claims are meager, even when there was initially a contractual bar to it. If class actions are endorsed under circumstances when it is

6

expressly barred, it is even more logical to allow it when the clause is simply silent. Here, Claimant's personal claim is only $200, and the claims of other putative class members are likely similarly small. Also, it is not certain that attorney's fees will be recovered even though the FCA allows for them. 47 U.S.C. § 206.[1] Thus, under AAA Supplementary Rule 3, the clause permits class arbitration because applicable state law allows it.

   <u>The Goals Of Speed And Efficiency Of Arbitration.</u> Respondent contends that class arbitration is contrary to the speedy arbitration that the arbitration clause espouses by incorporating the Wireless Industry Arbitration ("WIA") Rules. Respondent urges that the WIA Rules applicable to the small claims here provided for economical and fast-track arbitration (Resp., p. 2.), which class arbitration will surely undermine. Respondent is certainly correct that speed and efficiency are hallmarks of arbitration, and that a class arbitration will take much longer than any single subscriber dispute.

   However, three factors weigh strongly in favor of Claimant. First, Respondent admitted that the Fast Track WIA Rules do not apply here (Answer, ¶ 9.), and has waived the 60-day hearing restriction. (Pre-Hearing Order No. 1.) Thus, those procedures are not forfeited by the use of class arbitration. Second, the AAA Supplementary Rules for Class Arbitrations augment the WIA Rules here (Suppl. Rule 1.), and Respondent has so admitted. (Answer, ¶ 11.) Thus, this arbitration is not limited to just one set of arbitration rules. Third, the speed of the overall process must consider the total number of potential arbitrations if each proceeded separately. Where, as here, there could possibly be at least hundreds (if not more) of them, it is clear that a class proceeding will be more efficient than piecemeal arbitrations.

### Conclusion

   For the foregoing reasons, this Arbitrator finds that under AAA Supplementary Rule 3, the parties' arbitration clause permits this arbitration to proceed on behalf of a class.

   This matter is stayed for 30 days to permit any party to move a court of competent jurisdiction to confirm or vacate this Clause Construction Award. No later than May 11, 2009, counsel shall notify this Arbitrator by joint letter if such action has or has not been taken, and, if taken, the status of the matter before the court. Also, if any party wants this Arbitrator to further stay these proceedings, such motion and supporting argument shall be made no later than May 18, 2009. Any response or opposition to such motion shall be submitted by June 1, 2009.

Dated: April 2, 2009

                    _____
                     Stuart M. Widman, Arbitrator

---

[1] On January 20, 2009, this Arbitrator ruled that Respondent is, at this stage of the case, responsible for the bulk of the arbitration costs. (Pre-Hearing Order No. 3.) But that may be changed if the class is certified. (*Id.*) Thus, the class is also potentially responsible for advancing significant future costs of this arbitration.