# EXHIBIT 6

## To SouthernLINC's Memorandum in Support of Motion to Vacate

**AMERICAN ARBITRATION ASSOCIATION**
**COMMERCIAL AND CLASS ACTION ARBITRATION TRIBUNAL**

| | |
|---|---|
| In the Matter of Arbitration Between: | ) |
| | ) |
| DEREK THOMAS, individually, and on behalf of others similarly situated, | ) |
| | ) |
| | ) Case No.      11 494 01518 08 |
|           and | ) Arbitrator:   Stuart M. Widman |
| | ) |
| SOUTHERNLINC COMMUNICATIONS SERVS., INC. d/b/a SOUTHERNLINC WIRELESS | ) |
| | ) |
| | ) |

**CLAIMANT'S MOTION FOR PRELIMINARY CLAUSE**
**CONSTRUCTION AWARD TO ALLOW CLASS ACTION**

Now Comes Claimant Derek Thomas, individually and on behalf of others similarly situated, by his undersigned attorneys and respectfully moves for a Preliminary Clause Construction Award to allow class action treatment under Rule 3 of the AAA's Supplemental Rules.  For grounds he states:

1.      On July 31, 2008 this case was filed before AAA, seeking class action treatment on behalf of similarly situated SouthernLinc customers, with claimant proposing to represent the following class:

> All consumer subscribers to SouthernLinc's wireless telephone service pursuant to contracts which include an early termination fee provision, and who paid or who have been charged an early termination fee by SouthernLinc.[1]

---

[1]      Excluded from the ETF Class are SouthernLinc; any entity in which it has a controlling interest; any of its parents, subsidiaries, affiliates, officers, directors, employees and members of their immediate families; and members of the American Arbitration Association and their immediate families.

2.     The Agreement binding Claimant Thomas (and all others similarly situated) and Respondent SouthernLinc contains the following arbitration and other relevant clause:

> 17. Arbitration. The parties will make good faith attempts to resolve any disputes. If the parties cannot resolve the dispute within 60 days after the matter is submitted to them, then, unless otherwise agreed, the parties will submit the dispute to arbitration. The parties will request that arbitrator(s) hold a hearing within 60 days following their designation, and render a final and binding resolution within 30 days after the hearing. The parties will conduct the arbitration … pursuant to applicable Wireless Industry Arbitration Rules of the American Arbitration Association.
>
> 18.     Miscellaneous. …. This Agreement is governed by Georgia law.

3.     Neither the arbitration nor any other clause excludes class actions, making class-wide arbitration of Claimant Thomas' claims permissible and appropriate.

## I.     AAA RULINGS FIND "CLASS-NEUTRAL" CLAUSES TO ALLOW CLASS ARBITRATION

The task of the arbitrator at the clause construction phase is to make a gateway determination whether a case can be arbitrated on a class-wide basis.  It is settled law that whether an arbitration agreement affords the parties the right to proceed on a class wide basis is a matter for the arbitrator to determine, not the court.  *Green Tree Financial Corp. v. Bazzle,* 539 U.S. 444 (2003).  *Accord Chris Zacharias et al v. Cypress Comm'ns*, No. 11 181 00004 06, Class Action, Clause Construction Partial, Final Arbitration Award, Nov. 27, 2006 (<u>Exhibit A</u>); *Anthony Hobby v. Snap-on Tools Co., LLC.,* AAA Class Action Docket, Case No., 11 114 0188404, Clause Construction Award at p. 2 (Matthews, J. Arbitrator, June 8, 2005).

Under *Green Tree, supra*, the adjudicating tribunal's focus of inquiry is whether the arbitration clause was intended to *exclude* class treatment.  Pursuant "to the plurality opinion in *Bazzle* and Rule 3 of AAA's Supplementary Rules [for Class Arbitration], arbitrators must

attempt to determine whether the parties intended when they executed standard form agreements to *exclude* class action claims…" *Hobby* at p. 9.  (emphasis added).  In this case, as Claimant Thomas states in paragraph 2, above, the Arbitration Provision makes no attempt to exclude class action arbitrations.   Indeed, since the decision in *Bazzle* and the adoption of Supplemental Class Action Rules, the AAA has consistently found that where an arbitration provision is silent on the availability of class action treatment, the contract will be construed to allow class arbitrations. *Zacharias* (Exhibit A); *Dub Herring Ford, Inc. et all, v. Dealer Computer Services*, Case No. 111810111906, Clause Construction Award, November 21, 2006; *Bagpeddler, et al. v. U.S. Bancorp & Nova Information Systems,* AAA Class Action Docket, Case No. 111810032204, Clause Construction Award, September 2, 2004; *Janice Bactor, et. al., v. Cottage Homesteads of America, et. al.,* AAA Class Action Docket, Case No. 111150296704, Clause Construction Award, May 11, 2005; *Joseph G. Milstein v. Protection One Alarm Services, Inc.,* AAA Class Action Docket, Case No. 111100027004, Clause Construction Award, October 11, 2004.

Most significantly, the AAA has found class arbitration appropriate when the claimant asserted claims regarding the ETF provision of Verizon Wireless, a competitor of Respondent, under a similarly broad arbitration clause applying Illinois law.  *Zobrist v. Verizon Wireless*, AAA Case No. 11 494 00324 05, Partial . . . Clause Construction Award, November 22, 2005. (Exhibit B).  The reasoning in *Zobrist* applies with equal force to arbitration provisions governed by Georgia law, as is the one at issue here.  Indeed, in *Zacharias*, an AAA adjudicator sitting in Atlanta and reviewing a contract governed by Georgia law previously found a "class-neutral" arbitration clause, similar to the one at issue here, to permit class-wide arbitration:

> Excluding disputes, controversies, claims or collection efforts regarding Customer's failure to pay any Charges or Early Termination Fees invoiced to Customer, any and all disputes, controversies and claims arising out of or relating to the Master Terms and Conditions of a Service

> Order, including its validity, shall be settled and determined by arbitration conducted in Atlanta, Georgia before one (1) arbitrator in accordance with Commercial Arbitration Rules and Mediation Procedures then in effect of the American Arbitration Association…

(*Zacharias*, Demand For Class Action Arbitration, <u>Exhibit A</u>)

In *Zacharias*, the AAA arbitrator found it significant that the clause at issue did not "**forbid[] class arbitration**." (<u>Exhibit A</u>, at 6, applying *Green Tree*; emphasis in original.) The arbitrator further noted that "due regard" must be given to "the federal policy favoring arbitration" and the principle that "any ambiguity must be resolved in favor of arbitration," as well as to the construction of an ambiguous document against the drafting party, which warranted the conclusion, "when the Claimants signed the Contracts, they could not possibly have understood that the vague language of the Arbitration Clause constituted a waiver of any right to participate in a class action." *Id*. at 7-9, citing to *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 63 (1995), *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468 (1989), and *Moses H. Cone Memorial Hosp. v Mercury Constr. Corp.*, 460 U.S. 1 (1983).

## II.   GEORGIA CONTRACT LAW WARRANTS A CONSTRUCTION ALLOWING CLASS ARBITRATION

The contract itself calls for the application of Georgia law.  But as a general matter, arbitration clauses are interpreted, along with all other contractual clauses, according to ordinary state-law rules of contract construction.  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924 (1995).  The contract law of Georgia warrants a finding that Claimant Thomas's Arbitration Clause permits class-wide adjudication of his claims.

In Georgia "[t]here is a "presumption ... in favor of arbitrability with respect to the question whether a particular issue is within the scope of a valid arbitration agreement." *Krut v.*

*Whitecap Hous. Gr., LLC,* 268 Ga. App. 436, 602 S.E. 2d 201, 206 n.3 (Ga. App. 2004). Courts divine parties' intent to arbitrate by reviewing the scope of the arbitration clause. *Sheet Metal Workers Local 57 Welfare Fund v. Tampa Sheet Metal Co., Inc.,* 786 F.2d 1459, 1460-61 (11th Cir. 1986) ("the arbitrability of any dispute turns in the first instance on the arbitration clause of the contract. This is so because our duty is to implement the intent of the parties. To determine their intent, we must first examine the terms of their contract.") "If its arbitration clause is broad, then we must find that **the parties bargained to have any dispute that arguably falls within the scope of that clause settled through arbitration**, absent compelling proof to the contrary." *Id.* (emphasis added). Any doubt about the scope of an arbitration agreement should be resolved in favor of *including* matters of substance and procedure to be arbitrated. *Mitsubishi v. Soler,* 473 U.S. 614 (1985). Pursuant to *Mitsubishi*, whether class arbitration is permitted under the contract should be resolved in favor of including matters of substance and procedure, namely the class treatment of similar consumer claims.

Under Georgia law, "a contract of adhesion [ ] has been defined as 'standardized contract offered on a 'take it or leave it' basis and under such conditions that a consumer cannot obtain the desired product or service except by acquiescing in the form contract. Such contracts, while permissible, are construed strictly against the drafter." *Hospital Authority of Houston County v. Bohannon,* 272 Ga. App. 96, 98-99, 611 S.E. 2d 663, 666 (Ga. App. 2005). When interpreting a contract of adhesion, "in the event of an ambiguity [it] must be construed most strongly against the party preparing it…" *Rossville Federal Sav. & Loan Ass'n v. Insurance Co. of N. Am.,* 121 Ga. App. 435, 438, 174 S.E. 2d 204, 208 (Ga. App. 1970).

Any contractual limitation to a buyer's remedy is valid and enforceable only where it ***clearly*** appears in the language and terms of the instrument. *Central of Georgia Ry. Co. v.*

*Butler Marble & Granite Co.,* 8 Ga. App. 1, 68 S.E. 775, 777 (Ga. App. 1910) (*held*, general and vague limitation as to value in bill of lading will not exempt carrier from liability for true value of shipment in event of damage).  Effect must be given to all terms of a contract, if possible: "The construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part;…" Ga. Code Ann., §13-2-2(4); see also *First Data POS, Inc. v. Willis*, 273 Ga. 792, 546 S.E. 2d 781, 794 (Ga. 2001) ("It is axiomatic that contracts must be construed to give effect to the parties' intentions, which must whenever possible be determined from a construction of the contract as a whole.") (internal citations omitted).

Applying these principles to the Arbitration Clause at issue here, class arbitration is permissible.  The contract at issue in this case is a standardized form contract offered to the customers of Respondent on a "take it or leave it" basis – in other words, an adhesion contract. The Arbitration Clause does not bar class actions but rather is *totally* silent on the question of class treatment.  At best, this permits class arbitration but at worst merely creates an ambiguity to be resolved against the drafter and in favor of granting class arbitration. *Zacharias, supra*. Furthermore, to bar class action arbitration would be limit the consumer's remedy without the requisite clear expression of intent to do so. *Central of Georgia, supra*.  Additionally, granting class arbitration will not violate any term of the contract, and indeed, denying class arbitration would effectively rewrite the contract to improperly exclude a remedy in contravention of public policy. *Mitsubishi, supra*.  To do so would, for all intents and purposes, shut the door on Claimant's (and the proposed Class's) claim against SouthernLinc.

## III.   CONCLUSION

Wherefore, Claimant moves for entry of Clause Construction Award, finding that this case and subject Clause permits this matter to being arbitrated as a putative class action.

Date:   November 24, 2008

Respectfully Submitted,

**DEREK THOMAS,**
**Named Claimant,**

By:   _/s/ Paul M. Weiss_____
        One of His Attorneys

Michael L. McGlamry
Wade H. Tomlinson
Alan G. Snipes
**POPE, McGLAMRY, KILPATRICK,**
 **MORRISON & NORWOOD, LLP**
3455 Peachtree Road, N.E., Suite 925
Atlanta, Georgia 30326-3243
(404) 523-7706

Jeffrey P. Harris
Elizabeth Hutton
**STATMAN, HARRIS & EYRICH, LLC**
441 Vine Street, 3700 Carew Tower
Cincinnati, OH 45202
(513) 621-2666

Richard J. Burke
**RICHARD J. BURKE LLC**
1010 Market Street, Suite 650
St. Louis, Missouri 63101
(314) 880-7000

Paul M. Weiss
Michael J. Lotus
Eric C. Brunick
**FREED & WEISS LLC**
111 West Washington Street,
 Suite 1331
Chicago, Illinois 60602
(312) 220-0000

Jim S. Calton, Jr.
**CALTON & CALTON**
Post Office Box 895
Eufaula, Alabama  36072-0895
(334) 687-3563

**Attorneys for Claimant**
 **and Proposed ETF Class**

# EXHIBIT A

AMERICAN ARBITRATION ASSOCIATION
COMMERCIAL ARBITRATION TRIBUNAL
_____x

CHRIS ZACHARIAS; Z-CONSTRUCTION GROUP, INC.;
and STEPHEN KAUFMAN, individually and on behalf of all
others similarly situated,

                              Claimant,

                vs.                                    Case No.:
                                                11 181 00004 06

CYPRESS COMMUNICATIONS, INC.; CYPRESS
COMMUNICATIONS OPERATING COMPANY, INC.;
CYPRESS COMMUNICATIONS OPERATING
COMPANY, LLC; and CYPRESS COMMUNICATIONS
HOLDING CO., INC.,

                              Respondents.
_____x

## CLASS ACTION, CLAUSE CONSTRUCTION
## PARTIAL, FINAL ARBITRATION AWARD

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with an
Arbitration Agreement entered into in January 2005 and having been duly sworn and
having heard the proofs and allegations of the Parties, do hereby issue the following
PARTIAL, FINAL ARBITRATION AWARD:

## I
## BACKGROUND

Claimant Chris Zacharias is a construction contractor with an office in Chicago,

Illinois. Claimant Z-Construction Group, Inc. is a construction corporation which is

wholly owned and controlled by Claimant Chris Zacharias. Claimant Stephen Kaufman is

an individual who is alleged to have claims in this arbitration which are virtually identical

to those alleged by the other claimants.[1]

---

[1] On October 17, 2006, Claimants' counsel served a motion to add Z-Construction Group, Inc. and Stephen
Kaufman as claimants. That motion is granted, and the additional claimants are included in the caption of
this Partial, Final Award.

Respondent Cypress Communications, Inc. is a leading provider of customized, bundled communications services to businesses located in more than 1200 multi-tenant office buildings throughout the United States. The other Respondents are all related to Cypress Communications, Inc. and accordingly, Respondents are collectively referred to herein as "Cypress" without distinguishing among the individual Cypress entities.

In January 2005, Claimant Chris Zacharias (on behalf of Claimant Z-Construction Group, Inc.) entered a written contract with Cypress whereby Cypress was to furnish certain telecommunications and related services to Mr. Zacharias. At or about the same time, Claimant Stephen Kaufman entered into a written contract with Cypress Communications, Inc. which was identical in all presently material respects to the Zacharias contract. The Zacharias contract and the Kaufman contract are collectively referred to herein as the "Contracts".

## II
## THE CLAIM

The claims in this arbitration can be briefly summarized as follows:

1. The Contracts provide that Cypress is to render the agreed services in accordance with certain Master Terms and Conditions which are incorporated therein ("Master Terms").

2. The Master Terms provide that "[e]ach month, Cypress will submit invoices to Customer."

3. Prior to Claimants' entering into the Contracts, Cypress allegedly furnished them with advertising which stated that: "[a]ll your Cypress services are conveniently invoiced on one monthly statement" and "[Cypress] provide[s] a

2

single, comprehensive and easy to read invoice for all your communications

services and associated equipment."

4.  Despite its alleged promise to provide invoices, Cypress has billed Claimants

an extra charge of up to $18.50 per month for the sending of a paper invoice

to Claimants. According to Claimants, the only way they could have avoided

this charge is if they procured all their bills themselves from a designated

Cypress website, and

5.  Claimants would allegedly be subject to substantial penalties if they cancelled

the Contracts because of Cypress' monthly charge for the sending of invoices.

* * * *

Based on the foregoing, Claimants allege that Respondents are in violation of the

Georgia Uniform Deceptive Trade Practices Act, the Georgia Fair Business Practices Act

of 1975, the Illinois Consumer Fraud and Deceptive Business Practices Act and other

State law consumer statutes and, in addition, it is alleged that Respondents have engaged

in common law fraud, breach of contract, negligent misrepresentation and conversion.

### III
### THE CLASS

Claimants seek to bring this arbitration individually and on behalf of all Cypress

customers throughout the United States "who or which have entered into service

agreements that did not provide for extra invoicing charges but who have paid such

charges".

## IV
## FIRST STAGE OF DETERMINING
## <u>PROPRIETY OF CLASS ACTION</u>

The present phase of this arbitration is governed by the American Arbitration

Association's Supplementary Rules for Class Arbitrations, effective October 8, 2003

("AAA's Class Action Rules"). Section 3 of those Rules (titled "Construction of the

Arbitration Clause") provides in pertinent part that:

> . . . [T]he arbitrator shall determine as a threshold matter, in
> a reasoned, partial final award on the construction of the
> arbitration clause, whether the applicable arbitration clause
> permits the arbitration to proceed on behalf of or against a
> class (the "Clause Construction Award").[2]

The parties seem to agree and, indeed, there can be no serious dispute that this

Arbitrator has jurisdiction to decide the Clause Construction Issue, as described in

Section 3 of the AAA's Class Action Rules. As the plurality stated in <u>Green Tree</u>

<u>Financial Corp. v. Bazzle</u>, 539 U.S. 444, 451-52, 123 S. Ct. 2402, 156 L. Ed.2d 414

(2003):

> Under the terms of the parties' contracts, the question—
> whether the agreement forbids class arbitration—is for the
> arbitrator to decide. The parties agreed to submit to the
> arbitrator "*all* disputes, claims, or controversies arising
> from or relating to this contract or the relationships which
> result from this contract." . . . And the dispute about what
> the arbitration contract in each case means (*i.e.*, whether it
> forbids the use of class arbitration procedures) is a dispute
> "relating to this contract" and the resulting "relationships."
> Hence the parties seem to have agreed that an arbitrator,
> not a judge, would answer the relevant question.

* * * *

The arbitration clause in this case is at least as broad as the one in <u>Green Tree</u> since

(with certain inapplicable exceptions) the present clause covers "any and all disputes,

---

[2] The issue now before the Arbitrator is referred to herein as the "Clause Construction Issue".

controversies and claims arising out of or relating to the Master Terms and Conditions or a Service Order, including its validity . . . ." Hence, this Arbitrator takes jurisdiction of the Clause Construction Issue.

**V**

**CLAUSE CONSTRUCTION CONTENTIONS**

Respondents argue that the arbitration clause in the Contracts ("Arbitration Clause") actually forbids class arbitration for a number of reasons which are separately discussed below.

**A. Georgia Contract Law**

Respondents assert that Georgia contract law is applicable here[3] and that Georgia law precludes class arbitration where, as here, the arbitration clause is completely silent on that subject. In support, Respondents rely on cases such as Rabun & Assocs. Construction, Inc. v. Berry, 276 Ga. App. 485, 623 S.E.2d 691 (Ct. App. 2005). In Rabun, the plaintiff homeowners sued a contractor for damages to their home and property caused by rain and storm water. The contractor argued that plaintiffs had waived any right to sue because: (i) the applicable contract between the parties required plaintiffs to maintain "fire, theft and liability" insurance; (ii) this language was surely intended to include insurance against rain and storm water damage, as well; and (iii) plaintiffs had never procured rain and storm water insurance on the property in question.

The Rabun court rejected the foregoing argument, stating that the contract never mentioned rain and storm water insurance and that: " 'neither the trial court nor this Court is at liberty to rewrite or revise a contract under the guise of construing it.' " (citing

---

[3] Section 24.8 of the Master Terms and Conditions provides that: "The Master Terms and Conditions and the terms of any Service Order and any addendum thereto, shall be governed by and enforced according to the laws of the State of Georgia without giving effect to any of its rules of conflicts of laws."

Fernandes v. Manugistics Atlanta, Inc., 261 Ga. App. 429, 433, 582 S.E.2d 499 (2003);
see Goodman v. Frolik & Co., 233 Ga. App. 376, 504 S.E.2d 223 (1998).

Based on Rabun and similar cases, Respondents argue that a court cannot impose a
contractual obligation to which a party did not agree and that being so, a court cannot
require a party to engage in class arbitration if the arbitration clause is silent on that
subject. In the Arbitrator's view, however, there is a big difference between re-writing a
contract to impose a substantive obligation to which the parties did not agree, on the one
hand and, on the other, to require that parties be subject to normally applicable class
action procedures under circumstances where their contract does not say anything, one
way or the other, on that subject.

When construing an arbitration clause which is silent on class arbitration, it is
important to keep in mind that the test under Green Tree is not whether the arbitration
clause **permits** class arbitration but, rather, whether it **forbids** class arbitration.[4] While a
clause which is silent on class arbitration might be argued not to affirmatively **permit**
such arbitration, a strong case can be made that a clause which is silent on class
arbitration clearly does not **forbid** it. Here, this is particularly so since the Contracts do
expressly forbid the arbitration of "disputes . . . regarding Customer's failure to pay any
Charges or Early Termination Fees." In light of this, it appears that: (i) when
Respondents wished to forbid a certain type of arbitration, they inserted language in the
Contracts explicitly so stating; and (ii) Respondents' failure to include language in the

---

[4] For example, the plurality in Green Tree stated that: " . . . the question—whether the agreement **forbids**
class arbitration—is for the arbitrator to decide." (Emphasis added.) The plurality also referenced "the
dispute about what the arbitration contract in each case means (i.e., whether it **forbids** the use of class
arbitration procedures) . . ."

Contracts expressly precluding class arbitration is therefore a factor of significance in the present inquiry.[5]

## B. **Presumption of Arbitrability**

In assessing whether the Arbitration Clause "forbids" class arbitration, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself [must be] resolved in favor of arbitration." Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University, 489 U.S. 468, 103 L. Ed. 2d 488, 109 S. Ct. 1248 (1989). As the court stated in Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 74 L. Ed. 2d 765, 103 S. Ct. 927 (1983):

> The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

A broad, encompassing reading of an arbitration clause is particularly appropriate where, as here, the party resisting arbitration drafted the agreement in question and simply presented it to consumer customers as something that had to be signed in order for there to be purchases and sales. In this regard, see 11 Williston on Contracts, Sec. 32:12 (4th ed. 2005):

> Since the language is presumptively within the control of the party drafting the agreement, it is a generally accepted principle that any ambiguity in that language will be interpreted against the drafter. . . . Indeed, any contract of

---

[5] Respondents cite certain cases pre-dating Green Tree Financial Corp., in an effort to support their position that an arbitration clause forbids class arbitration if it is silent on the subject. (Champ v. Siegel Trading Co., 55 F.3d 269 (7th Cir. 1995); Protective Life Insurance Corp. v. Lincoln National Life Ins. Corp., 873 F.2d 281 11th Cir. 1989). Reliance on such authorities for that proposition, however, is at best problematic since Green Tree changed the entire legal landscape with regard to class arbitration.

> adhesion, a contract entered without any meaningful
> negotiation by a party with inferior bargaining power, is
> particularly susceptible to the rule that ambiguities will be
> construed against the drafter.

And finally, it is significant that when the Claimants signed the Contracts, they could not possibly have understood that the vague language of the Arbitration Clause constituted a waiver of any right to participate in a class action. In this regard, see Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S.52, 63, 115 S. Ct. 1212, 131 L. Ed. 2d 76 (1995):

> Respondents drafted an ambiguous document, and they
> cannot now claim the benefit of the doubt. The reason for
> this rule is to protect the party who did not choose the
> language from an unintended or unfair result. That rationale
> is well suited to the facts of this case. As a practical matter,
> it seems unlikely that petitioners were actually aware of
> New York's bifurcated approach to punitive damages, or
> that they had any idea that by signing a standard-form
> agreement to arbitrate disputes they might be giving up an
> important substantive right. In the face of such doubt, we
> are unwilling to impute this intent to petitioners.

## B. Use of the Singular

Respondents argue that the Contracts "clearly use . . . the singular when referring to the parties to the dispute resolution process" and, more particularly, that the Contracts refer to arbitration of disputes between Cypress and its "Customer". According to Respondents, this language indicates an intent to arbitrate a single dispute between Cypress and a single customer and, thus, is wholly inconsistent with any notion of a class arbitration on behalf of thousands of customers.

\* \* \* \*

The foregoing argument is rejected. In the Arbitrator's view, the Contracts' use of the singular when referring to the parties to the dispute resolution process is wholly

consistent with class arbitration for the reason, among others, that a class action is a quasi-procedural mechanism for amalgamating a series of individual claims, each one of which remains an individual claim even after it is brought under the umbrella of a class action.

## C. **The Purpose of Arbitration**

Respondents argue that the parties to the Contracts could not possibly have contemplated class arbitration since class arbitration runs counter to the core purpose of arbitration which is to achieve fair, swift and cost effective justice. Reduced to its essence, what Respondents are really saying is that a single claim can be resolved in less time and for less money than a thousand claims. That is obviously so but it wholly misses the point which is controlling here, i.e., that the fairest, swiftest and most cost effective way to resolve **all** the claims of **all** the potential members of a class is through a class action, assuming a class action is otherwise appropriate.

* * * *

For the reasons stated, Respondents' argument based on the purpose of arbitration is rejected.[6]

## D. **Alleged Challenge to Filed Tariffs**

Respondents assert that the Complaint herein is a challenge to their "filed tariffs" and that the arbitration clauses "could not possibly have contemplated class arbitration because any determination regarding tariffed rates and services is within the exclusive jurisdiction of state regulatory authorities."

---

[6] Respondents contend that the Contracts incorporate the American Arbitration Association's Commercial Rules, not the Supplementary Rules for Class Arbitration and that the Supplementary Rules are therefore inapplicable here. This argument is rejected since the Supplementary Rules specifically provide that they apply "to any dispute arising out of an agreement that provides for arbitration pursuant to **any** of the rules of the American Arbitration Association." (Emphasis added.)

The foregoing argument is rejected for the reason it relates solely to the merits of the dispute and has nothing whatever to do with the scope of the arbitration clauses in the Contracts. Stated somewhat differently, the notion that the parties had their filed tariffs in mind when they drafted their arbitration clauses and that the tariffs somehow had something to do with their intent at the time and the language they used is too far-fetched to require further discussion.

**E. Stolt-Nielsen**

Respondents rely heavily on Stolt-Nielsen SA v. Animalfeeds International Corp., 435 F. Supp.2d 382 (S.D.N.Y. 2006), stating that the case "vacated an arbitration panel's class construction award, finding that it was a manifest disregard of the law to find that parties agreed to class wide arbitration where their agreement did not expressly permit class arbitration." For the reasons set forth below, the Arbitrator disagrees with this reading of the case.

In Stolt-Nielsen, the arbitration panel had held that class arbitration of a maritime antitrust dispute was not forbidden by an arbitration clause which was silent on the subject of class arbitration. In vacating that award, the court made the following findings:

**FIRST**, the court held that: (i) the arbitration panel misread Green Tree as holding that an arbitration clause which is silent on class arbitration **must** be read as permitting class arbitration; and (ii) in fact, Green Tree simply held that the issue of whether an arbitration clause forbids class arbitration is to be referred to arbitrators when the arbitration clause is silent on the subject.

**SECOND**, the court concluded that the arbitrators had wrongly ignored a clear showing that custom and usage unique to the maritime industry precluded class

arbitration when the arbitration clause was silent on the subject. In discussing this custom and usage, the court stated:

> . . . in the maritime area, more than perhaps any other, the interpretation of contracts and especially charter party agreements is very much dictated by custom and usage. . . . Indeed, it could hardly be otherwise, for the international and transient nature of maritime commerce renders the development of binding rules of custom absolutely necessary if the business is not to devolve into chaos.

* * * *

In the Arbitrator's view, the <u>Stolt-Nielsen</u> decision has little to do with the Clause Construction Issue in this case. First, <u>Stolt-Nielsen</u> turned on the unique custom and usage of the maritime industry whereas there was no showing here of any custom and usage in the telecommunications industry. And second—contrary to the situation in <u>Stolt-Nielsen</u>, this Arbitrator has in no way read <u>Green Tree</u> as holding that class arbitration **must** be permitted when an arbitration clause is silent on the subject. To the contrary, the Arbitrator recognizes the holding of <u>Green Tree</u> simply to be that the issue of whether an arbitration clause which is silent on class arbitration should nonetheless be read to forbid class arbitration is a matter to be decided by the arbitrator in the first instance. And that is what this Arbitrator has done, <u>i.e.</u>, he has considered the language and nuances of the Contracts, as well as applicable Georgia law and all other facts and surrounding circumstances and on that basis, has concluded that the arbitration clauses in the Contracts do not forbid class arbitration.

## VI
## <u>CONCLUSION</u>

For the reasons set forth above, the Arbitrator hereby enters his Partial, Final Arbitration Award as follows:

The arbitration clauses in the Contracts do not forbid class arbitration and, in fact, are in all respects consistent with pursuit of class arbitration. That being so and in light of all the reasons set forth in the body of this Partial, Final Award, the Arbitrator concludes that the Arbitration Clause permits the arbitration to proceed on behalf of a class within the meaning of Section 3 of the American Arbitration Association's Supplementary Rules for Class Arbitrations ("Section 3").

Pursuant to Section 3, this arbitration is stayed for a period of 45 days to permit any party to move a court of competent jurisdiction to confirm or to vacate this Clause Construction Award.

_John Wilkinson_    11/27/06
John Wilkinson    Dated

I, John Wilkinson, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is my Partial, Final Arbitration Award.

_John Wilkinson_    11/27/06
John Wilkinson    Dated

12

# EXHIBIT B

# American Arbitration Association
## Commercial and Class Action Arbitration Tribunal

Case #11 494 00324 05

In the Matter of Arbitration Between:

Dawn M. Zobrist, individually, and on behalf
of others similarly situated

Claimant

and

Verizon Wireless, Verizon Communications, Inc.
and Cellco Partnership

Respondent

---

## PARTIAL AWARD ON CLAIMANT'S REQUEST FOR PRELIMINARY CLAUSE CONSTRUCTION AWARD

I, THE UNDERSIGNED ARBITRATOR, having been designated and sworn in accordance with the arbitration agreement entered into between Claimant, and Respondent in July 2001, the Commercial Arbitration Rules of the American Arbitration Association (AAA), as supplemented by the Supplementary Rules for Class Arbitrations, and pursuant to Preliminary Scheduling Order #1 in this proceeding, enter this Partial Award Granting Claimant's Request For Preliminary Clause Construction Award.

### Introduction

As the undersigned noted in *Anthony Hobby v. Snap-on Tools Co., LLC,* AAA Class Action Docket Case No. 11 114 0188404, Clause Construction Award, p. 2, (June 8, 2005) under the Supplementary Rules for Class Arbitrations adopted by the AAA following the decision of the U.S. Supreme Court in *Green Tree Financial Corp. v. Bazzle,* 539 U.S. 444 (2003) individual arbitrators must, in the following words of The Honorable Charles A. Flynn, Jr., (District Court Judge, Retired) in his Clause Construction Award entered September 2, 2004 in *Hearthside Restaurant, Inc., et al v. Qwest Dex, Inc., et al,* AAA Class Action Docket, (www.adr.org) Case No. 11 147 00357 04 predict how courts would decide these issues.

"However, after Bazzle, it is clear, and the parties agree, that the issue of whether class action relief is available is to be decided by the arbitrator not the courts. The parties further agree that the arbitrator must apply Minnesota [the law chosen in the contract] substantive law, that is the law of the state where the contract is entered into, in deciding the issue. Since there is no post Bazzle case directly on point, the arbitrator is left to

Case #11 494 00324 05

**In the Matter of Arbitration Between:**

Dawn M. Zobrist, individually, and on behalf
of others similarly situated

                                     Claimant

and

Verizon Wireless, Verizon Communications, Inc.
and Cellco Partnership

                                     Respondent

---

anticipate the decision of the Minnesota Supreme Court when and it if is
presented with an appropriate case."

### The Contract Language and Applicable Law

The standard form contract includes the following provision relevant to the issues
at this stage of these proceedings:

> "Any controversy or claim arising out of or relating to this agreement,
> other than a claim by Verizon Wireless as to non-payment, shall be settled
> by binding arbitration in accordance with the commercial arbitration rules
> of the American Arbitration Association (Rules) and judgment upon the
> award rendered by the arbitrator may be entered in any court of competent
> jurisdiction."

The parties agree that the Federal Arbitration Act (FAA) applies as to procedural
issues, but Illinois law applies as to substantive issues, to the extent they are not
preempted by the FAA itself.

### Summary of the Parties' Positions

The parties agree that the subject contract is silent as to whether the parties
intended to permit class treatment of claims governed by the arbitration provision. The
parties also agree that there is no clear binding authority from the Supreme Court of
Illinois (or intermediate Illinois appellate courts) as to whether class-wide arbitration of
claims is permissible in the absence of express language in the contract authorizing such.

Case #11 494 00324 05

In the Matter of Arbitration Between:

Dawn M. Zobrist, individually, and on behalf
of others similarly situated

                                        Claimant

and

Verizon Wireless, Verizon Communications, Inc.
and Cellco Partnership

                                        Respondent

---

Claimant argues that principles of contract construction applicable to contracts of adhesion compel construction of the agreement to permit class treatment of claims, provided the claims are otherwise proper for class treatment. Claimant also argues that under applicable U.S. Supreme Court authority, any doubt about the scope of an arbitration agreement should be resolved in favor of including and not excluding matters of substance and procedure to be arbitrated.

Respondent argues that the parties drafted the agreement based on the law as it existed at the time and because the majority of courts (mostly federal) that had addressed the issue concluded arbitration provisions in contracts precluded class treatment of claims, this agreement should be interpreted to preclude class actions, even though it is silent on the subject.

I find Claimant's arguments more persuasive under applicable law and construe the subject clause as not prohibiting class treatment of claims, provided they are otherwise appropriate for class action certification.

## Analysis

The contract in this case is unquestionably a contract of adhesion under the law of Illinois. *Abbott v. Amoco Oil Co.*, 249 Ill.App.3d 774; 619 N.E.2d 789,794 (1993). Applying basic principles of contract construction under Illinois and U.S. law, I conclude that the arbitration clause in the subject contract must be construed in the light most favorable to Claimant (*Zubit v. Acceptance Indemnity Insurance Company*, 323 Ill.App.3d 28; 751 N.E.2d 69 (2001) and that any doubt about the scope of the arbitration

3

Case #11 494 00324 05

In the Matter of Arbitration Between:

Dawn M. Zobrist, individually, and on behalf
of others similarly situated

Claimant

and

Verizon Wireless, Verizon Communications, Inc.
and Cellco Partnership

Respondent

---

provision must be resolved in favor of including not excluding claims on behalf of a putative class. *Mitsubishi v. Soler*, 473 U.S. 614 (1985)

Respondent's choice of language in its arbitration clause is extremely broad, including "any controversy or claim arising out of or relating to this agreement." When it wanted to exclude a claim, it did so with the specific language "other than a claim by Verizon Wireless as to non-payment."

Respondent's argument that I should interpret that intent of the contract language by looking to the established law in existence at the time the contract was drafted would be more persuasive if, in fact, the courts of Illinois had clearly established prior to the time this contract was executed (July 2001) that in the absence of a clear expression granting class treatment of claims in arbitration, they are barred. However, Respondent's counsel candidly acknowledges that Illinois courts had not addressed this issue prior to the time of this contract nor have they addressed it at any time up to the present.

I have found nothing in Illinois law that would suggest it precludes class treatment of claims otherwise proper for class treatment, merely because the contract between the parties selects arbitration in broad language. In the absence of clear language prohibiting class treatment, I conclude this agreement does not prevent Claimant from seeking to establish her right to represent a class if she is able to meet the requirements for maintenance of a class action.

Case #11 494 00324 05

**In the Matter of Arbitration Between:**

Dawn M. Zobrist, individually, and on behalf
of others similarly situated

Claimant

and

Verizon Wireless, Verizon Communications, Inc.
and Cellco Partnership

Respondent

---

*Conclusion*

Pursuant to Rule 3 of the Supplementary Rules for Class Arbitrations, I stay all proceedings in this matter for a period of 30 days to permit any party to move ask a court of competent jurisdiction to confirm or vacate this Clause Construction Award.

IT IS SO ORDERED.

Dated: ___11/22/05___                    _____
                                          Joseph M. Matthews

I, Joseph M. Matthews, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

Dated: ___11/22/05___                    _____
                                          Joseph M. Matthews

5

# American Arbitration Association
## Commercial and Class Action Arbitration Tribunal

Preliminary Order # 2                                          Case #11 494 0032 05

**In the Matter of Arbitration Between:**

Dawn M. Zobrist, individually, and on behalf
of others similarly situated

and

Verizon Wireless, Verizon Communications, Inc.
and Cellco Partnership

## ORDER ON MOTION TO STAY

This matter came on for consideration by Arbitrator Joseph M. Matthews on Respondents' Motion to Stay. Upon review of the Motion and supporting exhibits, the supporting and opposing memoranda, it is

ORDERED as follows:

1.     The motion to stay is deferred.
2.     Simultaneous with this Order, the arbitrator has entered a Partial Award Construing the subject Arbitration Clause in accordance with Rule 3, Supplementary Rules for Class Arbitration and has entered a Stay of these proceedings pending review of that Partial Award.
3.     Upon completion of the clause construction phase and return of these proceedings to this arbitrator, Respondents' motion to stay based on the primary jurisdiction doctrine will be taken up immediately.

DONE AND ORDERED.

Dated: __November 22, 2005__          _____
                                        Arbitrator's Signature