# EXHIBIT 7

## To SouthernLINC's Memorandum in Support of Motion to Vacate

**AMERICAN ARBITRATION ASSOCIATION**
**COMMERCIAL AND CLASS ACTION ARBITRATION TRIBUNAL**

| | | |
|---|---|---|
| In the Matter of Arbitration Between: | ) | |
| | ) | |
| DEREK THOMAS, individually, and on behalf | ) | |
| of others similarly situated, | ) | |
| | ) Case No. | 11 494 01518 08 |
| and | ) Arbitrator: | Stuart M. Widman |
| | ) | |
| SOUTHERNLINC COMMUNICATIONS | ) | |
| SERVS., INC. d/b/a SOUTHERNLINC | ) | |
| WIRELESS | ) | |

**CLAIMANT'S REPLY IN SUPPORT OF HIS MOTION FOR PRELIMINARY CLAUSE CONSTRUCTION AWARD TO ALLOW CLASS ACTION**

On December 22, 2008, Respondent SouthernLinc Communications Services, Inc. d/b/a SouthernLinc Wireless, filed its Brief In Opposition To Claimant's Motion For Preliminary Clause Construction Award. ("Opposition"). In its Opposition, Respondent ignores, intentionally or otherwise, the fact that since the U.S. Supreme Court's decision in *Green Tree Financial Corp. v. Bazzle,* 539 U.S. 444 (2003), and the AAA's subsequent adoption of its Supplementary Rules for Class Arbitrations, there has been a wealth of decisions from the AAA consistently issuing clause construction awards where the underlying arbitration provision is silent on the availability of class arbitration.[1] Here, even though the arbitration clause drafted by Respondent is completely silent on class arbitrations (and the aggregation of claims generally)*,*

---

[1] *Zobrist v. Verizon Wireless*, AAA Case No. 11 494 00324 05, Partial . . . Clause Construction Award, November 22, 2005; *Chris Zacharias et al v. Cypress Comm'ns*, No. 11 181 00004 06, Class Action, Clause Construction Partial, Final Arbitration Award, Nov. 27, 2006; *Dub Herring Ford, Inc. et al, v. Dealer Computer Services*, Case No. 111810111906, Clause Construction Award, November 21, 2006; *Anthony Hobby v. Snap-on Tools Co., LLC.,* Case No., 11 114 0188404, Clause Construction Award, June 8, 2005; *Bagpeddler, et al. v. U.S. Bancorp & Nova Information Systems,* AAA Class Action Docket, Case No. 11 181 00322 04, Clause Construction Award, September 2, 2004; *Janice Barton, et. al., v. Cottage Homesteads of America, et. al.,* AAA Class Action Docket, Case No. 11 115 02967 04, Clause Construction Award, May 11, 2005; *Joseph G. Milstein v. Protection One Alarm Services, Inc.,* AAA Class Action Docket, Case No. 11 110 00270 04, Clause Construction Award, October 11, 2004.

Respondent attempts to argue that the parties plainly intended to exclude class arbitrations and the provision is only capable of one reasonable interpretation.  (Opposition at 2-3).  However, that self-serving interpretation is both contrary to the language of the arbitration agreement (or lack thereof) and the law, and should be rejected.

> **I.     The Arbitration Clause Is Silent On Class Arbitration, And Therefore Class Arbitration Is Permitted.**

When an arbitration clause is silent on the availability of class arbitration, *Bazzle* and the AAA's Supplementary Rules for Class Arbitrations dictate that the Arbitrator determine the intent of the parties to include or exclude class arbitrations. Georgia law, which, as an initial matter indisputably permits class actions and, moreover, governs interpretation of this arbitration clause, dictates that when construing contracts, the cardinal rule is to ascertain the intent of the parties. *Eckerd Corp. v. Alterman Properties, Ltd.,* 264 Ga. App. 72 (2003); *see also CareAmerica, Inc. v. Southern Care Corp.,* 229 Ga. App. 878 (1997).  In this case, not only has the AAA consistently granted clause construction awards for arbitration clauses identical, or substantially similar, to the one at issue, but further there is no evidence of any mutual intent to prohibit class arbitration.

In *Hobby v. Snap On Tools*, Arbitrator Matthews found that, "In my view, the plurality decision in *Bazzle* places the burden on any party seeking to use a mandatory arbitration clause as a bar to class treatment of claims to establish such 'intent' by the clear expression of the language in the contract."  Case No. 11 114 01884 04, Preliminary . . . Clause Construction Award, June 8, 2005, p. 10.  Arbitrator Matthews concluded that, "if the drafter of the present CPD contracts – here, respondent DCS – wanted to select arbitration as the sole dispute resolution mechanism for nearly 'all' disputes but prohibit any class arbitration procedure, it should have said so expressly. . ." (*Id*. at 12).

In this case, there is no "clear expression" of any mutual intent to bar class treatment in the language of the arbitration clause. As Claimant noted in its Motion, the arbitration clause is silent regarding aggregation of claims. Like the respondent in *Hobby*, Respondent in this case failed to draft its arbitration clause to expressly prohibit class arbitration and, as a consequence, cannot argue for its preclusion now.[2]

Respondent argues that the clause's silence does not create an ambiguity, (Opposition at 7), yet Georgia law and AAA decisions hold to the contrary. For example, in *Yates v. Dublin Sir Shop,* the Georgia Court of Appeals stated:

> We do not agree with appellants that the declaration is perfectly clear. Because the document was written in contemplation of developing a retail shopping center, it includes language referring to that intent. But the document is silent as to whether that is the only permissible use of the property. It is therefore ambiguous on this point. The trial court correctly resorted to the principles and rules of contract construction to resolve this ambiguity.

260 Ga. App. 369, 371 (Ga. Ct. App. 2003). *See also Sharple v. Airtouch Cellular of Ga.*, 250 Ga. App. 216, 218-219 (Ga. Ct. App. 2001). The AAA cited *Yates* and *Sharple* when it explicitly stated that under Georgia law, if a contract is silent on a particular issue, the contract may be deemed ambiguous on that issue. *In re Bagpeddler.com and U.S. Bancorp & Nova Information Systems*, Case No. 11 181 00322 04 at 5 (finding that an arbitration clause that was silent on class arbitration permitted class arbitration). This is in line with the United States Supreme Court that the scope of arbitration should be expansive. *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 25 (1983).[3] Such scope cannot be limited by

---

[2]    While not at issue here, had Respondent inserted such a clause prohibiting class arbitation of such small dollar claims, such a clause would most likely be deemed unconscionable and unenforceable.

[3] ". . . [Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration. We agree. The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues  should be resolved in favor of arbitration, whether the problem

silence.  *Joseph G. Milstein v. Protection One Alarm Services*, Case No. 11 110 00270 04, Clause Construction Award, October 11, 2004., p. 6 ("The public policy favoring enforcement of arbitration agreements supports the notion that exclusion of class arbitration must be a knowing bargained for exchange and silence does not support a knowing waiver.").

Because the contract at issue, which, to be sure, is a contract of adhesion, is silent on the permissibility of class arbitrations, it creates an ambiguity in the contract language. It is a universally accepted rule of contract construction that any ambiguity must be construed against the drafter of a contract of adhesion.

Citing O.C.G.A. § 13-2-2(5), the Supreme Court of Georgia acknowledged this tenet of contract construction, stating, "Under the statutory rules of contract construction, if a contract is capable of being construed two ways, it will be construed against the preparer and in favor of the non-preparer." *Hertz Equip. Rental Corp. v. Evans,* 260 Ga. 532, 533 (Ga. 1990).  Further, as the U.S. Supreme Court has stated, "Respondents drafted an ambiguous document, and they cannot now claim the benefit of the doubt. The reason for this rule is to protect the party who did not choose the language from an unintended or unfair result." *Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 63 (1995).  This tribunal recently cited *Mastrobuono* in granting another Clause Construction Award:

> This Arbitrator concludes that class arbitration is permitted because it was not expressly barred. This Arbitrator bases this conclusion on various factors. First, a fundamental principle of contract construction is that a contract is to be construed against the drafter where there is ambiguity or uncertainty. . . Where a contract is silent on an issue, it is fair to construe it so that the drafter loses benefits that it may have been aware of but did not expressly preserve. See *Mastrobouno v. Shearson Lehman Hutton, Inc., et al*., 514 U.S. 52, 64 (1995), holding that the court would not impute any intent to the non-drafters to give up unknown rights that were not expressly disclosed or discussed in the contract. In other words, the non-drafter gets the benefit of the doubt.

at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."

*Lichter v Alarm One, Inc.*, Case No. 11 180 0240 08, Clause Construction Award, August 13, 2008, p. 6 (Widman, Arb.).

Because silence on the availability of class arbitration creates an ambiguity in a contract of adhesion, and because Respondent is the drafter of the contract, the ambiguity must be construed against Respondent and in favor of Claimant.  Thus, class arbitration is permitted.

## II.    Respondent's Arguments That The Contract Is Unambiguous Fail.

Respondent attempts to avoid a finding of ambiguity by this Tribunal by cobbling together a four-step argument to establish a "mutual intent" by the parties to "waive" class arbitration.  However, as noted above, this is not sufficient.  Furthermore, each step in the argument is unavailing on its own merits.

First, Respondent asserts that the Supplementary Rules for Class Arbitrations ("Supplementary Rules") cannot apply because the WIA rules governing this arbitration do not have a class arbitration track. (Opposition at 4).  The lack of class arbitration procedures in the WIA is irrelevant.  The Supplementary Rules, by their own terms, apply "to any dispute arising out of an agreement that provides for arbitration pursuant to any of the rules of the American Arbitration Association."  Supplementary Rules, 1(a).  Arbitrator Wilkinson explicitly noted the broad scope of the Supplementary Rules, finding that "the Supplementary Rules specifically provide that they apply 'to any dispute arising out of an agreement that provides for arbitration pursuant to **any** of the rules of the American Arbitration Association.'"  *Zacharias,* p. 9, fn. 6. Most importantly, the Supplementary Rules specifically indicate that more than one set of AAA rules may apply to any particular arbitration: "Where inconsistencies exist between these Supplementary Rules and other AAA rules that apply to the dispute, these Supplementary Rules

will govern." Supplementary Rules, 1(b).  Respondent's argument that the WIA rules preclude class arbitration fails.

Second, Respondent argues that the inclusion of specified time periods in the arbitration clause is equivalent to an express intent to forego class arbitration. (Opposition at 5) However, requesting a hearing within sixty days is *not* the same as agreeing not to proceed on a class-wide basis.  The same argument was made, and rejected, in *Dub Herring:*

> Respondent notes that both of the 'long form' agreements obligate the parties to schedule the arbitration hearing not more than sixty days from the selection of the arbitration panel 'except for legitimate and material reasons outside a party's control,' and argues that this provision cannot be reconciled with the timeliness established in the AAA's Class Arbitration Rules. This argument does not require extended discussion . . . at the initial Pre-Hearing Conference held in this matter on September 5, 2006, the panel set a schedule for resolution of the clause construction phase of this arbitration, with the agreement of the parties, that exceeded the 60 day limit now argued by respondent. Having agreed to alter that scheduling provision, respondent may not now rely upon it as a ground for resisting the clause construction order sought by claimants.

*Dub Herring Ford v. Dealer Computer Services,* Case No. 11 181 01119 06, Clause Construction Award, November 21, 2006, p. 14-15.  Just as the Respondent did in *Dub Herring*, Respondent in this case agreed to a briefing schedule that modified the time frames contained in the arbitration clause.  See Pre-Hearing Order No. 1.  Further, as reflected in Pre-Hearing Order No. 1, Respondent specifically waived the sixty day hearing date deadline. Because Respondent participated in the preliminary scheduling conference, consented to a modified briefing schedule, and specifically waived the sixty day hearing provision, it cannot now point to shorter time periods in the arbitration clause as a basis for denying class arbitration.

Next, Respondent asserts that class arbitration is incompatible with the terms of the contract because the contract defines "parties" as SouthernLinc and Claimant. (Opposition at 6) However,  "use of the singular when referring to the parties to the dispute resolution process is

consistent with class arbitration because class arbitration is a quasi-procedural mechanism for aggregating individual claims, each of which remains an individual claim." *Zacharias*, p. 9. Arbitrator Remele agreed, stating:

> [I]t is a basic reality that all legal disputes begin as a dispute between only two parties in which there must be standing to pursue a judicial controversy. It is only the procedural rights conferred by the Rules of Procedure [] which allows multiple party plaintiffs or defendants to be joined. Thus, the fact that the language of the arbitration references a single contract does not lead to the conclusion that class action treatment is not permissible.

*Janice Barton, et. al., v. Cottage Homesteads of America, et. al.,* Case No. 11 115 02967 04, Clause Construction Award, May 11, 2005, p. 4-5. "Virtually any 'silent' agreement, *i.e.* one that does not expressly authorize class arbitrations, can be expected to use language referring to the contracting parties and their particular contract. We would depart from the ordinary and reasonable plain meaning of such language to construe it as a veiled ban on class arbitration, and we decline to do so." *Dub Herring,* p. 12-13. *See also Weller v. Sprint Communications, L.P.*, Case No. 11 181 00070 06, Partial Award For Class Action Clause Construction, August 22, 2006, p 8-9 (same). Respondent's argument that the contract's use of singular terms precludes class treatment is therefore without merit.

Finally, Respondent attempts to argue that good faith negotiations are a condition precedent to pursuing arbitration and, therefore, class arbitrations are prohibited. (Opposition at 5). However, and as the AAA has found in *Dub Herring*, "good faith" is an ambiguous term that is too vague to be a condition precedent:

> The quoted provision does not describe negotiations as a condition precedent to arbitration, and we decline to add such a condition to the agreements by implication, particularly where 'good faith negotiations' is a vague term that would be difficult to apply as a condition precedent to arbitration. Although negotiations by DCS with an unhappy individual dealer, or with the putative class as a whole, may be desirable – and nothing in the Class Arbitration Rules precludes the parties from engaging in either – we decline to construe the

agreements either as requiring this as a condition precedent to arbitration or as an implied ban on class arbitration proceedings.

(p. 19)   Furthermore, this line of argument was previously rejected by an AAA arbitrator.  *See Weller*, p. 9-10.  Nothing in the contract prohibits a customer from attempting to resolve his or her dispute informally with Respondent prior to initiating class arbitration.

## III.    Denying Class Arbitration Would Limit Claimant's Remedy.

As a secondary argument, Respondent claims that because a class action is not a remedy, Claimant would not be denied a remedy should this Tribunal deny Claimant's motion for a Clause Construction Award.  This argument ignores the fact that, as many courts have noted, when a case such as this is not permitted to proceed as a class action, the result is not thousands of individual cases, but no cases at all:

> The more claimants there are, the more likely a class action is to yield substantial economies in litigation. It would hardly be an improvement to have in lieu of this single class action 17 million suits each seeking damages of $15 to $30. . . . The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.

*Carnegie v. Household International, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004).  This is a case where the maximum recovery for an individual is $200.00, potentially less.  While $200.00 is a bit more than the $30.00 that only a lunatic would sue over, in reality, denying Claimant's motion for a clause construction award will be equivalent to denying Claimant (and the proposed class) any remedy whatsoever.

## IV.    Respondent's Attempt To Distinguish Certain AAA Decisions Is Unavailing.

Respondent's final argument to deny Respondent's motion is an attempt to distinguish two (but not all) of the AAA rulings granting clause construction awards – *Zacharias* and *Zobrist*.  These arguments fail.

Respondent's assertion that *Zacharias* is inapplicable because the language of the arbitration agreement is not included in the opinion is a smokescreen.  First, the class action demand in *Zacharias*, which contains the arbitration agreement, is readily available on the AAA website, and it is readily apparent from the language quoted in the opinion (and is clearly stated in the order), that the arbitration provision is *silent* as to class arbitration.  As Georgia law, Supreme Court precedent, and AAA rulings state over and over again, an arbitration clause that is silent on class arbitration *permits* class arbitration.

Respondent then argues that *Zobrist* is inapplicable because the arbitration agreement is allegedly "broader" and "did not contain any preconditions to arbitration."  (Opposition at 9).  As Respondent discusses above, preconditions do not preclude class arbitration, and neither does the scope of the covered claims – the inquiry is whether there is any intent within the arbitration clause to forbid class arbitration.  The logic of *Zacharias* and *Zobrist* apply fully here.

## CONCLUSION

For all of the aforementioned reasons, Claimant's motion for a Clause Construction Award, finding that this case and subject Clause permits this matter to being arbitrated as a putative class action, should be granted.


Date:   January 6, 2009                    Respectfully Submitted,

                                           **DEREK THOMAS,**
                                           **Named Claimant,**

                                           By:     /s/ Eric C. Brunick
                                                   One of His Attorneys

Michael L. McGlamry                         Paul M. Weiss
Wade H. Tomlinson                           Michael J. Lotus
Alan G. Snipes                              Eric C. Brunick
**POPE, McGLAMRY, KILPATRICK,**             **FREED & WEISS LLC**
  **MORRISON & NORWOOD, LLP**               111 West Washington Street,
3455 Peachtree Road, N.E., Suite 925          Suite 1331

9

Atlanta, Georgia 30326-3243
(404) 523-7706

Jeffrey P. Harris
Elizabeth Hutton
**STATMAN, HARRIS & EYRICH, LLC**
441 Vine Street, 3700 Carew Tower
Cincinnati, OH 45202
(513) 621-2666

Richard J. Burke
**RICHARD J. BURKE LLC**
1010 Market Street, Suite 650
St. Louis, Missouri 63101
(314) 880-7000

Chicago, Illinois 60602
(312) 220-0000

Jim S. Calton, Jr.
**CALTON & CALTON**
Post Office Box 895
Eufaula, Alabama  36072-0895
(334) 687-3563

**Attorneys for Claimant
 and Proposed ETF Class**