# EXHIBIT 8

## To SouthernLINC's Memorandum in Support of Motion to Vacate

**BEFORE THE**
**AMERICAN ARBITRATION ASSOCIATION**

| | |
|---|---|
| DEREK THOMAS, individually ) <br> And on behalf of others similarly situated, ) <br> ) <br> Claimant, ) <br> ) <br> -against- ) <br> ) <br> SOUTHERN COMMUNICATIONS ) <br> SERVICES, INC. D/B/A SOUTHERNLINC ) <br> WIRELESS ) <br> ) <br> Respondent. ) <br> ) | Case No.    11 494 01518 08 <br> Arbitrator:  Stuart M. Widman, Esq. |

### RESPONDENT'S BRIEF IN OPPOSITION TO CLAIMANT'S MOTION FOR PRELIMINARY CLAUSE CONSTRUCTION AWARD TO ALLOW CLASS ACTION

Respondent Southern Communications Services, Inc. d/b/a SouthernLINC Wireless ("SouthernLINC") files this Brief in Opposition to Claimant's Motion for Preliminary Clause Construction Award to Allow Class Action:

### Introduction

The parties contracted for a two year service agreement. Claimant decided not to honor that contract and, further, refused to do what he promised: pay an early termination fee to SouthernLINC. The parties also contracted for a speedy, one-to-one dispute resolution process. Once again, Claimant wants to ignore the parties' contract. This tribunal should not let him.

Under the terms of the parties' arbitration agreement, any dispute between the parties is to be conducted in a speedy, one-to-one dispute resolution process governed by the Wireless Industry Arbitration Rules ("WIA Rules"). Claimant seeks to impose a slow, cluttered arbitration process governed by the AAA's class arbitration rules. This is contrary to the parties' agreement, and Claimant's arguments to avoid the process regarding which the parties contracted are not supported by Georgia law.

**Argument**

I.   **The Parties' Arbitration Agreement Precludes Class Arbitration.**

Claimant argues that, because the parties' arbitration agreement does not specifically forbid class arbitration, "the focus of inquiry is whether the arbitration clause was intended to *exclude* class treatment." (Motion at 2.) Claimant relies on *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003) in support of a basic premise that there is a presumption in favor of permitting class arbitration where there is no explicit waiver. But that is not the law. Although the *Bazzle* Court's inquiry was focused whether an arbitration agreement *forbids* class arbitration, the AAA rules under which this arbitration was brought require a showing that class arbitration is *permitted*, not simply that it is not excluded. Supplemental Rules for Class Arbitration, Rule 3 (hereinafter "SRCA"). In reality, the Court in *Bazzle* did not intend to create the presumption in favor of class arbitration that Claimant urges this tribunal to recognize, and certainly no Georgia court has recognized such a presumption. *See generally Bazzle*, 539 U.S. at 447; *cf. Stolt-Nielson SA v. Animalfeeds International Corp.*, 435 F. Supp.2d 382, 384-85 (S.D.N.Y 2006) (noting that *Bazzle* did not "control" the issue that an arbitration agreement silent on class treatment should be read to permit class arbitrations) *overturned on other grounds by Stolt-Nielson SA v. Animalfeeds Int'l Corp.*, 548 F.3d 85 (2d. Cir. 2008).

Rather, this tribunal must examine the parties' contract to determine their intention. Even if this tribunal interpreted the arbitration agreement as "silent" on class arbitration, the issue of the parties' intention is still one of state law contract interpretation. *Bazzle*, 539 U.S. at 450. Under Georgia law, the hallmark of contract interpretation is to ascertain the parties' intention. O.C.G.A. § 13-2-2; *Irvin v. Laxmi, Inc.*, 266 Ga. 204, 205 (1996). In the instant case, the intention of the parties to preclude class arbitration is plain from the face of the agreement.

### A. There is No Ambiguity in the Agreement.

Claimant asserts that, merely because the arbitration agreement does not contain an express class arbitration waiver, the contract is somehow ambiguous. (Motion at 3-4.) However, it is not necessary for a party to use a particular word or phrase for a contract to be plain and unambiguous, rather the question is whether the language employed by the parties in a contract is capable of only one reasonable interpretation. *See Nolley v. Md. Cas. Ins. Co.*, 222 Ga. App. 901, 903 (1996). Here, the arbitration agreement is capable of only one reasonable interpretation: the parties' intended to preclude class arbitrations.

Under Georgia law, a contract should not be torn apart and construed as separate parts, but a court or tribunal is charged with construing the entire instrument and must construe the agreement so as to reconcile its different parts. *See Connell v. Guarantee Trust Life Ins. Co.*, 246 Ga. App. 467, 469 (2000). In ascertaining the true intention of the parties, courts must reject a construction which leads to contradiction of the clear terms of the contract. *See id.*; *Wofac Corp. v. Hanson*, 131 Ga. App. 725, 727-28 (1974). Claimant urges this court to imply terms that are not present in the agreement itself, but this is not permitted under Georgia law. In deciding whether to imply promises or duties to terms of a contract, introduction of terms can be justified only when the terms are not inconsistent with some *express term* of the contract. *See Higginbottom v. Thiele Kaolin Co.*, 251 Ga. 149, 150-51 (1983); *Reg'l Pacesetters v. Eckerd Drugs of Ga.*, 183 Ga. App. 196, 197-98 (1987). Yet, this would be the result should this tribunal imply that the parties' intended to permit class arbitration pursuant to the AAA's class arbitration rules, as Claimant urges. *Id*; *see also DPLM, Ltd. v. J.H. Harvey Co.*, 241 Ga. App. 219, 224 (1999).

There are three principal characteristics of the parties' agreement that make it plain that it is subject only to an interpretation that precludes class arbitration: (1) the agreement requires the WIA Rules apply; (2) the agreement requires specific time restrictions that are incompatible with the AAA class arbitration rules; and, (3) the agreement clearly contemplates a one-to-one dispute resolution process. Interpreting the agreement as consistent with class arbitration directly conflicts with these three characteristics.

### 1. *The Parties Provided that the WIA Rules Applied.*

The parties' arbitration agreement requires that arbitration be conducted in accordance with the WIA Rules. Specifically, the arbitration provision provides:

> The parties will conduct the arbitration in Atlanta, Georgia pursuant to applicable Wireless Industry Arbitration Rules of the American Arbitration Association.

(Demand ¶ 6.)

The WIA Rules provide three different tracks for the administration of cases: fast, regular, and large/complex. Importantly, no track provides for class arbitration. When an arbitration agreement specifies that disputes will be governed by a particular set of rules, those rules become incorporated by reference and are considered terms of the arbitration agreement. *C & L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe*, 532 U.S. 411, 419 n.1 (2001). It is an axiomatic rule of contract interpretation that courts and tribunals should refrain from reading obligations into a contract that contradict express terms of the contract. *WirelessMD, Inc. v. Healthcare.com Corp.*, 271 Ga. App. 461, 464-65 (2005). Yet, that is what Claimant has urged this tribunal to do. The contract provides for one set of rules to govern the arbitration process, but Claimant seeks to apply different rules. This is simply not permitted under Georgia law. *Id. See also Reg'l Pacesetters*, 183 Ga. App. at 197-98; *Higginbottom*, 251 Ga. at 151; *BMW of North America, Inc. v. Krathen*, 471 So. 2d 585, 587 (Fla. 4th DCA 1985) ("[W]here a contract

4

is silent as to a particular matter, courts should not, under the guise of construction, impose on parties contractual rights and duties which they themselves omitted.").

> 2. *The Parties provided for a speedy and expeditious dispute resolution process, which is incompatible with class arbitration.*

The parties provided for a specific period of time for the arbitration to take place. Specifically, the arbitration agreement requires:

> The parties will request that arbitrator(s) hold a hearing within 60 days following their designation, and render a formal and binding resolution within 30 days after the hearing.

(Demand ¶ 6).

The speedy process required by the parties' agreement is simply impossible to undertake under the AAA's supplemental class arbitration rules. The agreement requires a hearing within 60 days of submission to the arbitration, but the supplemental class action rules require two preliminary findings before such a hearing can take place. The class action rules specifically call for a staying of the arbitration for a period of 30 days following each preliminary award to permit the parties to appeal the decision. SRCA 3 and 4. This process by itself would take up the 60 days required by the agreement for the parties to hold the hearing on the merits. Furthermore, the agreement provides a total of 90 days from submission to an award (60 days for the hearing and 30 days for an award after the hearing). There is simply no way for the arbitration to proceed under the class action rules of the AAA consistent with the time frames included in the parties' agreement.

> 3. *The Parties Contemplated One-to-One Dispute Resolution Process.*

The parties' arbitration agreement contains a condition precedent requiring good faith negotiations between the parties to the agreement prior to the submission of any matter to arbitration. Specifically, the arbitration agreement provides:

5

> The parties will make good faith attempts to resolve any disputes. If the parties cannot resolve the dispute within 60 days after the matter is submitted to them, then, unless otherwise agreed, the parties will submit the dispute to arbitration.

(Demand ¶ 6.) The parties' agreement also contains the following:

> If you believe your billing statement is incorrect, then you must notify us of your dispute within 30 days from the date of the first billing statement that contains your dispute or waive your right to that dispute. We require written notification of any disputes to the attention of Customer Accounting at the address in Section 18. All undisputed charges must be paid by the statement due date.

(Counterclaim ¶ 7.)

The agreement specifically defines the "parties" as SouthernLINC and Claimant. Taken together, these provisions clearly contemplate a direct, one-to-one exchange between the parties in order to resolve any disagreement under the agreement. But class arbitration is incompatible with this one-to-one process. A class arbitration would, by definition, simply forgo this direct, one-to-one process with each member of the class, because in a class arbitration, one class representative acts as a proxy for all class members. *See* Fed. R. Civ. P. 23(a) (detailing scenario where one person may represent interests of an entire class); *Robinson v. Sheriff of Cook County*, 167 F.3d 1155, 1157-58 (7th Cir. 1999) (detailing obligations of class representative to represent interests of the entire class).

Thus, permitting the arbitration to proceed under the AAA's Class Arbitration Rules and the SRCA would effectively eviscerate the preconditions for dispute resolution set forth in the parties' agreement. There would be no determination at all as to whether individual members of the class had made any good faith attempt to directly resolve their dispute with SouthernLINC, as required by the agreement, or whether they had waived their rights by failing to follow the prescribed procedure. Such a complete gutting of the parties' agreement regarding preconditions

is not favored under Georgia law. In fact, under Georgia law, preconditions to arbitration are valid and enforceable. *Holt & Holt, Inc. v. Choate Const. Co.*, 271 Ga. App. 292, 295 (2004) (holding that a parties failure to follow a precondition to arbitration barred the party from bringing an arbitration claim). Permitting the arbitration to proceed as a class, therefore, creates a conflict with the clear terms of the agreement. *See Brown v. Chrysler Corp.*, 112 Ga. App. 22, 23-24 (1965) (holding that contract must be given construction which will uphold and enforce instrument rather than a construction which would render it meaningless and ineffective); *see also Rice v. Huff*, 221 Ga. App. 592, 593 (1996).

B.   **The Agreement Should not be Construed Against SouthernLINC.**

Claimant argues that the agreement should be construed against SouthernLINC, as the drafter of the document. (Motion at 5.) However, this rule of construction has no application in this case. The rule is not intended to be used to introduce terms into an agreement, but comes into play when latent ambiguities present themselves in a contract. *Thomas v. B & I Lending, L.L.C.*, 261 Ga. App. 39, 41 (2003). As the discussion above demonstrates, no such ambiguity exists on the question of whether the parties' agreement permits class arbitration. Under Georgia law, "[c]ontract language is ambiguous if it is duplicitous, indistinct or has an uncertain meaning." *Kuehn v. Selton & Assocs.*, 242 Ga. App. 662, 668 (2000); *see also Horwitz v. Weil*, 275 Ga. 467, 468 (2002). Under the plain language of the parties' arbitration agreement, there is simply no uncertainty in its meaning or expression, since the language of the arbitration agreement is incompatible with the class arbitration process. *See Kuehn*, 242 Ga. App. at 668. Without ambiguity, the principle that a contract is interpreted against the party who drafted it does not come into play. *Thomas*, 261 Ga. App. at 41; *Sachs v. Jones*, 83 Ga. App. 441, 444

7

(1951) (noting that contracts are only to be interpreted against the party drafting them when the language in the instrument is ambiguous).

### C. The Agreement Does Not Limit Claimant's Remedy.

Claimant contends that failure to allow class arbitration would amount to a limitation on Claimant's remedy, and that "[a]ny contractual limitation to a buyer's remedy is valid and enforceable only where it *clearly* appears in the language and terms of the instrument" is inapposite. (Motion at 5-6.) However, a limitation on the ability to seek class arbitration is not a limitation on a *remedy*. Class treatment is merely a procedure for obtaining a remedy, not a remedy itself. *See* Fed. R. Civ. P 23; *Montgomery Ward & Co. v. Langer*, 168 F.2d 182, 187 (8th Cir. 1948) (discussing class actions as a procedural device created by equity in order to ensure enforcement of equitable remedies). Claimant points to no case that states a limitation on a *procedure* must clearly appear in the language of the contract.

### D. The Agreement as Written Should be Enforced.

Finally, this tribunal must take notice of the strong public policy in Georgia requiring that contracts should be enforced upon their own terms, and any attempt to get out from under a bargain previously made should be done only in the most extraordinary circumstances. *See Atknison v. Cook*, 271 Ga. 57, 58-9 (1999); *Adler v. Adler Co.*, 205 Ga. 818, 825 (1949). No such extraordinary circumstances exist here, and the parties' agreement, requiring a speedy, one-to-one dispute resolution process governed by the WIA Rules, should be enforced.

### II. The Arbitration Awards Cited by Claimant as Support Are Inapposite to the Arbitration Agreement at Issue Here.

Claimant relies on the Partial, Final Arbitration Award in *Zacharias v. Cypress Communications* and *Zobrist v. Verizon Wireless*. (Attached as Exhibit A and B, respectively, to Claimant's Motion.) However, neither of those decisions is persuasive here.

8

First, the Partial, Final Arbitration Award in *Zacharias* does not even quote the predicate arbitration agreement at issue. (*See generally* Motion, Exhibit A.) A determination of whether an arbitration agreement permits class arbitration must be done on a case-by-case basis, with particular reference to the language of the agreement. *See generally Bazzle*, 539 U.S. at 453-54. Without knowing the language of the arbitration agreement at issue in *Zacharias*, it is simply impossible to determine whether or not it is relevant to the situation here. Nevertheless, a reasonable assumption can be made that the agreement in *Zacharias* did not contain the same preconditions and limitations as the one at issue here, since the Respondent principally relied on abstract theories related to the purpose of arbitration. (*See generally id.* at 9 (rejecting Respondent's argument that since the purpose of arbitration is to achieve a swift and cost effective judgment, the parties could not have intended to permit class arbitration).)

Second, the Partial, Final Arbitration Award in *Zobrist* concerned a much broader arbitration agreement then the one at issue here. (Motion, Exhibit B at 2.) Specifically, the arbitration agreement did not contain any preconditions to arbitration and did not establish a definitive time for the arbitration to be completed. (*Id.*) It merely required that the parties arbitration "any controversy or claim arising out of or relating to [the] agreement." Therefore, the holding in *Zobrist* is not persuasive here, where the arbitration agreement contains specific requirements that are incompatible with the class arbitration process. (*See* discussion *supra*, Section I.)

## Conclusion

The parties' arbitration agreement is susceptible to only one interpretation: it precludes class arbitration. There are simply no circumstances under which the arbitration could proceed and stay true to the plain language of the arbitration agreement. There is no principle of Georgia

9

law that would invalidate the agreement as written.  Hence, it must be enforced.  Claimant's Motion for Preliminary Clause Construction Award to Allow Class Action should be DENIED.

Respectfully submitted this 22nd day of December, 2008.

TROUTMAN SANDERS LLP

/s/ Benjamin L Young
Robert P. Williams II, Georgia Bar No. 765413
John P. Hutchins, Georgia Bar No. 380692
Benjamin L. Young, Georgia Bar No. 159077
Attorneys for Respondent
Southern Communications Services, Inc. d/b/a
SouthernLINC Wireless

5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, GA 30308-2216
Phone: (404) 885-3000
Fax: (404) 885-3900

**BEFORE THE
AMERICAN ARBITRATION ASSOCIATION**

| | |
|---|---|
| DEREK THOMAS, individually<br>And on behalf of others similarly situated,<br><br>    Claimant,<br><br>-against-<br><br>SOUTHERN COMMUNICATIONS<br>SERVICES, INC. D/B/A SOUTHERNLINC<br>WIRELESS<br><br>    Respondent. | Case No.  11 494 01518 08<br>Arbitrator: Stuart M. Widman, Esq. |

## CERTIFICATE OF SERVICE

  I certify that I have this day served upon counsel for all parties a copy of the foregoing RESPONDENT'S BRIEF IN OPPOSITION TO CLAIMANT'S MOTION FOR PRELIMINARY CLAUSE CONSTRUCTION AWARD TO ALLOW CLASS ACTION by electronic mail as follows:

Paul M. Weiss – paul@freedweiss.com
Eric C. Brunick – ericb@freedweiss.com
Michael J. Lotus – mike@freedweiss.com
Freed & Weiss LLC
111 West Washington Street, Suite 1331
Chicago, IL 60602

Alan G. Snipes – alansnipes@pmkm.com
Wade H. Tomlinson, III –
triptomlinson@pmkm.com
Mike McGlamry – mmcglamry@pmkm.com
Pope McGlamry Kilpatrick & Norwood, LLP
Synovus Centre
1111 Bay Avenue, Suite 450
Columbus, GA 31901

Jeffery P. Harris – jharris@statmanharris.com
Elizabeth Hutton – lhutton@statmanharris.com
Statman, Harris & Eyrich, LLC
441 Vine Street, 3700 Carew Tower
Cincinnati, OH 45202

Jim S. Calton, Jr. – caltonlaw@eufaula.rr.com
Calton & Calton
226 East Broad Street
Eufaula, Alabama 36027

This 22nd day of December 2008.

             /s/ Benjamin L Young
             BENJAMIN L. YOUNG
             Georgia Bar No. 159077